## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SHADRACH ENNIS, NICOLAAS VANLEEUWEN, and TERRANCE JESCLARD, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>ALDER PROTECTION HOLDINGS, LLC, a Delaware limited liability company; ADAM SCHANZ, an individual; ADAM CHRISTIAN, an individual; KYLE DEMORDAUNT, an individual; DANE MCCARTNEY, an individual; and DOES I–X,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART, AND DENYING IN PART, DEFENDANTS' MOTION TO DISMISS AMENDED COLLECTIVE/CLASS ACTION COMPLAINT**<br><br><br>Case No. 2:19-cv-00512<br><br><br>District Judge Clark Waddoups |

Before the court is Defendants' Motion to Dismiss Amended Collective/Class Action Complaint. (ECF No. 50.)  As explained below, Defendants' Motion is GRANTED in part and DENIED in part.

<u>Standard</u>

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a claim when the plaintiff fails to state a claim upon which relief can be granted. "'The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties may present at trial but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.'" *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citation omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1108 (10th Cir. 1991) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) ). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ). Plausibility, in the context of a motion to dismiss, means that the plaintiff has alleged facts that allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged.

Factual Background

As Defendants note, Plaintiffs' operative Complaint "span[s] fifty pages" and consists "of 216 individually numbered paragraphs (many containing subparts) . . . ." (ECF No. 60 at 26.) The court briefly identifies the parties and provides a short summary of the facts alleged. But the court assumes the parties' familiarity with the allegations contained in the operative Complaint. The facts necessary to resolution of the pending Motion are discussed in the court's Analysis section.

Defendant Alder Protection Holdings, LLC (Alder) "is a door-to-door sales company" "engaged in the business of selling, installing, and servicing electronic security equipment." (ACC ¶¶ 9, 15, ECF No. 41 at 3, 5.) Defendant Adam Schanz "is the founder, owner, manager, and the Chief Executive Officer of" Alder. (ACC ¶ 10, ECF No. 41 at 4.) Defendant Adam Christian "is the General Counsel of Alder." (ACC ¶ 10, ECF No. 41 at 4.) Defendant Kyle DeMordaunt is the Chief Financial Officer of Alder. (*See* ACC ¶ 12, ECF No. 41 at 4.)

Defendant Dane McCartney "is the President of Sales for Alder." (*See* ACC ¶ 13, ECF No. 41 at 5.)

Alder "relies on individual sales representatives to sell its alarm services and products on a commission basis to residential customers throughout the United States." (ACC ¶ 15, ECF No. 41 at 5.) "The individuals who Alder recruits as door-to door sales representatives are predominantly college-age males who" typically work "during the summer months" (ACC ¶ 24, ECF No. 41 at 7.)

Plaintiff Shadrach Ennis "worked for Alder from approximately January of 2016 to February of 2019." (ACC ¶ 4, ECF No. 41 at 3.) Plaintiff Nicolaas Vanleeuwen "worked for Alder from approximately March of 2016 to January of 2019." (ACC ¶ 6, ECF No. 41 at 3.) Plaintiff Terrance Jesclard "worked for Alder from approximately 2011 to 2018." (ACC ¶ 7, ECF No. 41 at 3.)

Plaintiffs allege that "Alder incentivizes sales representatives to forego immediate compensation in exchange for illusory promises of long-term wealth through the creation of 'books of business' that will pay guaranteed returns to them in the future." (ACC ¶ 17, ECF No. 41 at 3.) "Alder requires each sales representative to enter an independent contractor agreement that provides for how the sales representative will be compensated (the 'Agreement(s)')." (ACC ¶ 66, ECF No. 41 at 17.)

Plaintiffs attached a copy of a 2017 Divisional Sales Manager Agreement to their operative Complaint as an example of a compensation Agreement that Alder requires its sales representatives to sign. (*See* ACC ¶ 68, ECF No. 41 at 18.) The 2017 Divisional Sales Manager Agreements granted Plaintiffs a "Contract Participation" under a "2017 Residual Equity Plan." (*See* ECF No. 41-3 at 1.) The 2017 Residual Equity Plan and a separate document—Alder's LLC

Agreement—contain provisions relevant to Plaintiffs' Residual-based compensation.[1] Plaintiffs do not attach a contract for any year other than for 2017, and it is unclear whether the same form of contract was in effect for other years at issue.

The 2017 Divisional Sales Manager Agreement, the 2017 Residual Equity Plan, and Alder's LLC Agreement are distinct from certain Promissory Notes and Confessions of Judgment that Plaintiffs allege Alder "required" them "to sign" "at the time they were hired by Alder and/or at various intervals throughout their relationship with Alder." (ACC ¶ 36, ECF No. 41 at 11.) Plaintiffs allege that Alder used the Notes and Confessions of Judgment "to control, intimidate, and retaliate against its sales representatives." (ECF No. 41 at 11.)

Analysis

Defendants made nine arguments in their opening Motion. (*See* ECF No. 50 at 7–35.) The court need only address seven of those arguments.[2]

I.      Class Action Waivers

Defendants argue that "[a]ll of the Amended Complaint's class and collective action claims should be dismissed because each Plaintiff waived the right to pursue class or collective action claims against Alder and its officers" when they signed their respective 2017 Divisional Sales Manager Agreements. (*See* ECF No. 50 at 7, 9 n. 2.) Defendants, in making this argument,

---

[1] Defendants attached copies of their "2017 Residual Equity Plan" (ECF No. 50-1) and "Amended and Restated Limited Liability Company Agreement" (ECF No. 50-2) to their Motion to Dismiss.

[2] Defendants' seventh argument was that "Plaintiffs' claim under Utah's Sales Representative Commission Payment Act fails against the individual Defendants because they are not principals." (ECF No. 50 at 33.) In Opposition, Plaintiffs point out that "[t]he Complaint identifies Alder as the only Defendant against whom Plaintiffs asserts a claim under the Utah Sales Representative Commission Payment Act." (ECF No. 55 at 53.) There is therefore no need to address Defendants' seventh argument. Defendants' ninth argument assumes that Defendants will prevail in dismissing all of Plaintiffs' federal claims. (*See* ECF No. 50 at 35.) Because this court declines to dismiss all of Plaintiffs' federal claims, there is no need to address Defendants' ninth argument.

do not distinguish whether the waivers would apply to them in their individual capacities. Since the contract as alleged is only between Plaintiffs and the corporation, this is an issue that remains unresolved. Defendants argue that each of the 2017 Divisional Sales Manager Agreements contain a provision wherein each Plaintiff "'waived, to the full extent permitted by applicable law, the right to participate in, or to be a member of, any class action or collective actions against Alder or any of its affiliates' and in which [each Plaintiff] agreed that any claim 'against Alder or any of its affiliates will be brought in his individual capacity and not as a plaintiff or class member in any purported class or representative proceeding.'" (*See* ECF No. 50 at 8–9 (citation omitted).)

Plaintiffs make three arguments in response. First, they argue that "the class action waiver is not an appropriate basis to seek dismissal of plaintiff's claims under rule 12(b)(6)." (ECF No. 55 at 5.) Second, they argue that "fact discovery is necessary to determine whether the agreements relied upon by Alder are the agreements that govern the parties' dispute." (ECF No. 55 at 6.) Third, they argue that "Plaintiffs have sufficiently pleaded that the class action waiver is unenforceable" due to procedural and substantive unconscionability. (*See* ECF No. 55 at 6.)

In reply, Defendants address Plaintiffs' first and second arguments together in a single section—rather than separately. (*See* ECF No. 6 ("Plaintiffs argue that Rule 12(b)(6) is not the appropriate procedural vehicle to enforce the class and collective action waivers and that discovery is needed for the Court to determine whether to enforce the waivers.").) In this section, Defendants cite to four cases to support their argument that a court may enforce a contractual waiver provision on a 12(b)(6) Motion to Dismiss.[3] (*See* ECF No. 60 at 7.) But in each of those

---

[3] [1] *DeLuca v. Royal Caribbean Cruises, Ltd.*, 244 F. Supp. 3d 1342 (S.D. Fla. 2017); [2] *Zako v. Hamilton Co.*, No. 216CV166JCMPAL, 2019 WL 320552 (D. Nev. Jan. 23, 2019); [3]  *Birdsong v. AT & T Corp.*, No. C12-6175

four cases, it was undisputed that the contractual waiver relied on by the Defendant governed the parties' disputes.[4]

Here, Plaintiffs argue that "there may be more recent Agreements with somewhat different terms that superseded" the 2017 Divisional Sales Manager Agreements. (ECF No. 55 at 6.) Defendants do not dispute that Plaintiffs may have signed agreements more recently than 2017. (*See* ECF No. 60 at 6–8.) Rather than address this possibility directly, Defendants simply argue that "there is no question that each Plaintiff signed a contract unambiguously waiving the right to pursue claims against Alder or its affiliates in a class or collective action." (ECF No. 60 at 8.) Defendants' decision to side-step the issue, and their failure to dispute that more recent agreements may exist, raises a question about whether the 2017 Divisional Sales Manager Agreements have been superseded.

This court need not decide at this stage of the proceedings whether a class action waiver provision may properly be brought on a 12(b)(6) motion. Nor does it need to resolve Plaintiffs' unconscionability arguments. There is a reasonable question as to whether the 2017 Divisional Sales Manager Agreements govern the parties' dispute. The court agrees with Plaintiffs that fact discovery on this issue is needed. The court therefore declines to dismiss Plaintiffs' class and collective action claims at this time. Under the facts of this case, the issue of waiver and

---

TEH, 2013 WL 1120783 (N.D. Cal. Mar. 18, 2013); [4] *Lu v. AT & T Servs., Inc.*, No. C 10-05954 SBA, 2011 WL 2470268 (N.D. Cal. June 21, 2011).

[4] [1] *Deluca*, 244 F. Supp. 3d at 1344 ("The ticket contract contains terms and conditions that govern the relationship between Plaintiff and Royal Caribbean."); [2] *Zako*, 2019 WL 8014077 at *1 (After Plaintiff resigned from his employment, "the parties entered into a severance agreement" that Plaintiff did not dispute governed his relationship with Defendant); [3] *Birdsong*, 2013 WL 1120783 at *2 (Plaintiff did not argue that the Release Agreement that she signed may have been superseded by a subsequent agreement—she only argued that the Release Agreement was unenforceable); [4] *Lu*, 2470268 at *1 ("Plaintiff signed a severance agreement in connection with the termination of his employment" that Plaintiff did not dispute governed his relationship with Defendant).

unconscionability, which are affirmative defenses, will best be resolved on a more complete record—such as would be available at trial or on a motion for summary judgment.

## II.   Fraud Claims

Plaintiffs' third cause of action is for "breach of contract." (*See* ECF No. 41 at 35–36.) Plaintiffs' seventh cause of action is for "common law fraudulent inducement," and their eighth cause of action is for "common law fraud." (ECF No. 41 at 39–40.) Defendants argue that Plaintiffs' common law fraud claims should be dismissed for two reasons: [A] they are not pleaded with particularity as required by Rule 9(b), and [B] they are barred by the economic loss rule. (ECF No. 50 at 9.)

### A.  Rule 9(b)

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Tenth Circuit "'requires a complaint alleging fraud to set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" *Parrish v. Arvest Bank*, 717 F. App'x 756, 760 (10th Cir. 2017) (quoting *Koch v. Koch., Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000). "The purpose of Rule 9(b)" is "'to ensure that the complaint provides the minimum degree of detail necessary to begin a competent defense.'" *Fulghum v. Embarq Corp.*, 785 F.3d 395, 416 (10th Cir. 2015) (citation omitted).

In Utah, "[t]he elements that a party must allege 'to bring a claim sounding in fraud' are

> (1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage.

*Armed Forces Ins. Exch. v. Harrison*, 70 P.3d 35, 40 (Utah 2003).

Defendants argue that "Plaintiffs' common law fraud claims assert only generalized, vague, non-specific allegations that do not satisfy the particularity standard." (ECF No. 50 at 10.) Defendants also argue that "Plaintiffs' allegations leave Defendants guessing who is alleged to have misrepresented what to whom and when." (ECF No. 50 at 11.)

 In Opposition, Plaintiffs argue that Defendants "misrepresent[] the substance of the Complaint" by engaging in a "narrow dissection" of the Complaint that disregards supporting paragraphs in the Complaint that adequately describe Defendants' fraud. The court agrees with Plaintiffs that Defendants' arguments ignore specific allegations that are adverse to Defendants' position.

An examination of paragraph 29 of the Amended Complaint is illustrative. That paragraph provides, in relevant part:

> For example, in or around March of 2016, Adam Schanz personally recruited Mr. Vanleeuwen by representing (1) that Mr. Vanleeuwen would earn $50,000 per month after his second summer sales season and (2) that as an example of Mr. Vanleeuwen's earning potential, a certain rising-star sales representative for Alder was earning $150,000 per month (even though this individual was actually earning $20,000 per month).

(Am. Compl. ¶ 29, ECF No. 41 at 8.) Defendants, addressing paragraph 29, argued:

> This paragraph alleges that, in or around March 2016, Schanz described the future earning potential available to Vanleeuwen from working as an Alder service provider years in the future. Even if the alleged statements were made, they did not relate to a presently existing material fact. Nor can Vanleeuwen have reasonably relied on any alleged descriptions of future earning potential that contradicted the written agreements he signed with Alder that described the terms of his compensation. *Gold Standard, Inc. v. Getty Oil Co*., 915 P.2d 1060, 1068 (Utah 1996) (Holding that, in context of a fraud claim, "[u]nder the law of this state, a party cannot reasonably rely upon oral statements by the opposing party in light of contrary written information").

(ECF No. 50 at 12.) In opposition, Plaintiffs argued:

> Despite the Motion's arguments otherwise, the allegations in Paragraph 29 do relate to a presently existing material fact at the time the statements were made—Schanz's statements about a current Alder representative's earnings and the nature of the residual compensation model and how that would affect Vanleeuwen's earnings at Alder.

(ECF No. 55 at 25.) Defendants did not address Plaintiffs' argument in Reply. (*See* ECF No. 60 at 26–31.)

Paragraph 29 identifies the party making the (allegedly) false statement: Adam Schanz. It alleges when Mr. Schanz made this statement: March of 2016. It alleges the content of the false representation: that an Alder salesperson was earning $150,000 per month even though he was only earning $20,000. The false statement was about a then existing fact: how much the Alder salesperson was earning in 2016. And, when read together with the other allegations in the Complaint, Paragraph 29 reveals the consequences of the false representation: that Mr. Vanleeuwen was persuaded to join Alder based, at least in part, on the possibility that his earning potential could be up to $150,000 per month. (*See* ACC ¶ 28, ECF No. 41 at 8 ("Alder representatives . . . made misrepresentations during in-person recruiting conversations, on which Plaintiffs relied . . . in deciding to work for Alder . . . .").)

Paragraph 29 is an example of Defendants' willingness to simply ignore those allegations that satisfy Rule 9(b)'s heightened pleading standard. Defendants are not entitled to dismissal under Rule 9(b). Having reviewed the entirety of the Amended Collective/Class Action Complaint, the court is persuaded that it "provides the minimum degree of detail necessary" for Defendants to begin a competent defense. *Fulghum* 785 F.3d at 416.

B.  Economic Loss Rule

Plaintiffs' breach of contract claim relates to the contracts that governed how they were

compensated by Alder. Plaintiffs refer to these contracts as "the Agreements." (*See* ACC ¶ 66,

ECF No. 41 at 17 ("Alder requires each sales representative to enter an independent contractor

agreement that provides for how the sales representative will be compensated (the

'Agreement(s)')."))  As noted above, the 2017 Divisional Sales Manager Agreement is one

Agreement that provides for how sales representatives would be compensated. And, as discussed

above, it is unclear whether the 2017 Divisional Sales Manager Agreement is the applicable

agreement for each of the relevant years. But Plaintiffs have alleged that under whichever

Agreement governs, "Alder has failed to pay Plaintiffs the compensation owed to them,

including Residuals, commissions, bonuses, and has made improper deductions from their

compensation." (*See* ACC ¶ 101, ECF No. 41 at 28.) This is the basis of their breach of contract

claim. (*See* ACC ¶ 152, ECF No. 41 at 36 ("Alder has breached its obligations to Plaintiffs and

Claimants by, among other things, failing to pay commissions; failing to pay Monthly Residuals

. . . .").) Plaintiffs' breach of contract claim does not appear to relate to the Notes and

Confessions of Judgment that they signed.[5] (*See* ACC ¶¶ 149–53, ECF No. 41 at 36.)

Plaintiffs' common law fraudulent inducement claim relates to the Notes and Confessions

of Judgment. (*See* ACC ¶¶ 173–74, ECF No. 41 at 40.[6]) Plaintiffs "seek rescission of the Notes

_____

[5] Plaintiffs allege that "Alder uses promissory notes and confessions of judgment to control, intimidate, and retaliate against its sales representatives." (ECF No. 41 at 11.) Plaintiffs also allege that they "did not receive any benefit in exchange for signing the Notes and COJs. In most cases, the Notes and COJs reflected fictional loans that were never actually made to Plaintiffs." (ACC ¶ 45, ECF No. 41 at 13.) Plaintiffs further allege that Alder filed COJs against them, "which resulted in a judgment being entered before they were able to object or otherwise respond to the COJ." (ACC ¶ 55, ECF No. 41 at 14.) According to Plaintiffs, the "Third District [State] Court set aside" judgments against Mr. Vanleeuwen, Mr. Ennis, and Mr. Jesclard. (ACC ¶¶ 56–58, ECF No. 41 at 14–15.)

[6] (ACC ¶ 173, ECF No. 41 at 40 ("Alder and the Individual Defendants knew the misrepresentations were false and misleading at the time they were made and made them with intent to fraudulently induce Plaintiffs and Claimants to

and" Confessions of Judgment. (ACC ¶ 174, ECF No. 41 at 40.) They also argue that they are "entitled to punitive damages" for this claim.

Plaintiffs' common law fraud claim relates to both (1) the Agreements and (2) the Notes and Confessions of Judgment. (*See* ACC ¶¶ 181–82, ECF No. 41 at 42.[7]) Plaintiffs specifically allege that they were induced by the Defendants in this claim. (*See* ACC ¶ 181, ECF No. 41 at 42 ("Ultimately, Defendants' goal was to exploit Plaintiffs and Claimants by fraudulently **inducing** them to work for little or no compensation.") (bold added).)

Both parties appear to agree that Utah law controls these three claims. In Utah, "[t]he elements that a party must allege 'to bring a claim sounding in fraud' are" identical to those for a fraudulent inducement claim. *See Armed Forces Ins. Exch. v. Harrison*, 70 P.3d 35, 40 (Utah 2003).

"'Fraudulent inducement' combines both contract and tort law concepts and is thus at the juncture point of contract and tort law." 48 Am. Jur. Proof of Facts 3d 329. "Essentially, 'fraudulent inducement' occurs when a party to a contract was induced to enter into that contract by fraud of the other party." *Id*. "Because such fraud negates the 'meeting of the minds' required in a contract, the defrauded party has the right to avoid the contract or seek damages, depending upon the specific circumstances and the election of the defrauded party." *Id*.

---

sign the *Notes and COJs*." (emphasis added).); *see also* ACC ¶ 174 ("Plaintiffs and Claimants seek rescission of the *Notes and COJs*, as well as attorney fees and costs.").)

[7] (ACC ¶ 181, ECF No. 41 at 42 ("Defendants intended for Plaintiffs and Claimants to rely on these misrepresentations and omissions in deciding to work for Alder, in agreeing to Residual-based compensation plans (including the 2017 Residual Equity Plan), and in executing the Agreements, Notes, and COJs.") *see also* ACC ¶ 182 ("Defendants' misrepresentations and omissions were material to and were relied on by Plaintiffs and Claimants with respect to their decisions to work for Alder, to agree to Residual-based compensation plans (including the 2017 Residual Equity Plan), and to execute the Agreements, Notes, and COJs.").)

Utah Supreme Court precedent confirms that a contract induced by fraud is voidable. *Frailey v. McGarry*, 211 P.2d 840, 845 (Utah 1949) ("It must be remembered that a contract induced by fraud, false representations, mistake, etc., is not void but only voidable, and it is entirely within the right of the injured party to affirm it or treat it as valid and subsisting."); *Ockey v. Lehmer*, 189 P.3d 51, 56 (Utah 2008) ("Contracts that offend an individual, such as those arising from fraud, misrepresentation, or mistake, are voidable."); *United States v. Johnson*, 584 F.3d 995, 1003 (10th Cir. 2009) ("While under Utah law a contract induced by fraud or false representations is not void at its inception, it is, nevertheless voidable.") (internal quotation marks omitted) (citations omitted)).

As discussed above, it is clear that Plaintiffs seek to avoid the Notes and Confessions of Judgment. (ACC ¶ 174, ECF No. 41 at 40 ("Plaintiffs and Claimants seek rescission of the Notes and COJs . . . .") But is not clear from the Complaint that Plaintiffs seek to avoid the compensation Agreements. Indeed, Plaintiffs' breach of contract claim is based on the theory that Defendants owe them money under the compensation Agreements. (*See* ACC ¶ 151, ECF No. 41 at 36.) In their opposition, Plaintiffs explain that they "are not seeking to rescind the [compensation] Agreements . . . ." (ECF No. 55 at 54.) But they argue that it is possible that this court might find those Agreements to be unconscionable and acknowledge the possibility that they may be rescinded. Because the possibility exists that the compensations Agreements may be rescinded, Plaintiffs' breach of contract claim may be in tension with their common law fraud claim.  Rule 8(d)(3) of the Federal Rules of Civil Procedure allows Plaintiffs to assert inconsistent claims. Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."). The possible inconsistency between the claims is not—by itself—a bar to Plaintiffs bringing their fraud claims. But Defendants argue that the

economic loss rule is. (*See* ECF No. 50 at 37 ("The economic loss rule bars Plaintiffs' common law fraud claims.").)

"The economic loss rule marks the fundamental boundary between contract law and tort law." *Chinitz v. Ally Bank*, No. 2:19-CV-00059, 2020 WL 1692817, at *4 (D. Utah Apr. 7, 2020) (citing *Reighard v. Yates*, 285 P.3d 1168, 1176 (Utah 2012)). "Generally speaking, the economic loss rule prevents the recovery of purely economic damages under a tort theory 'when a contract covers the subject matter of the dispute.'" *Id*. (citation omitted). "Therefore, 'when a conflict arises between parties to a contract regarding the subject matter of that contract, the contractual relationship controls, and parties are not permitted to assert actions in tort in an attempt to circumvent the bargain they agreed upon.'" *Id*. (citation omitted). "The application of the economic loss rule depends on 'whether a duty exists independent of any contractual obligations between the parties.'" *Id*. (citation omitted). "'Once there is a contract, any tort claim must be premised upon an independent duty that exists apart from the contract.'" *Id*. (citation omitted). "In contrast, all contractual duties—and any breach of those duties—must be enforced through contract law." *Id*. "If, however, an independent duty exists that does not overlap with a contractual duty, the economic loss rule does not bar a party from bringing a tort claim based on that independent duty." *Id*.

Plaintiffs argue that the economic loss rule bars neither their (1) fraudulent inducement claim nor (2) their common law fraud claim. (*See* ECF No. 55 at 32.)

1.  Fraudulent Inducement Claims

In their Amended Collective/Class Action Complaint, Plaintiffs allege that "Alder required Plaintiffs . . . to sign Notes and [Confessions of Judgment] at the time they were hired by Alder and/or at various intervals throughout their relationship with Alder." (Am. Compl. ¶

36, ECF No. 41 at 11.) They also allege that Alder "initially presented the Notes and [Confessions of Judgment] as standard onboarding and annual paperwork." (Am. Compl. ¶ 37, ECF No. 41 at 11.)

Plaintiffs further allege that Defendants "had a policy and practice of inducing Plaintiffs and Claimants to sign the Notes and the [Confessions of Judgment] through representations that were false and/or misleading by omission." (Am. Compl. ¶ 171, ECF No. 41 at 39.) Plaintiffs allege that these misrepresentations include:

- "That the Promissory Notes and COJs were standard employee onboarding forms."
- "That compensation reported to the IRS on 1099 forms was income to Plaintiffs and Claimants that was fully earned."
- "That the sales representatives' own 'books of business' were worth extremely large amounts."
- "That sales representatives from prior sales seasons were earning amounts far in excess of their actual income."
- "That Alder was entitled to withhold amounts previously earned by Plaintiffs if they chose to not sign the Notes and COJs."

(Am. Compl. ¶ 171, ECF No. 41 at 39.)

Plaintiffs allege that "[t]hese misrepresentations were material to Plaintiffs' and Claimants' decision . . . to execute the various Notes and COJs that were presented to them throughout the course of their relationship with Alder," and allege that they "relied on these misrepresentations in executing the Notes and [Confessions of Judgment]." (Am. Compl. ¶ 172, ECF No. 41 at 39–40.)

Defendants argue that "[t]he economic loss rule bars Plaintiffs' fraudulent inducement claim" because the "promissory notes and confessions of judgment were part and parcel of the Plaintiffs' contractual relationship with Alder." (ECF No. 60 at 31.) In contrast, Plaintiffs argue

that the economic loss rule does not bar their fraudulent inducement claim because the misrepresentations described above "were not duplicated by any representation found in the Notes or" Confessions of Judgments. (ECF No. 55 at 35.)

In *HealthBanc*, the Utah Supreme Court was asked "to decide whether the 'economic loss rule' in Utah law extends to the tort of fraudulent inducement." *HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*, 435 P.3d 193, 194 (Utah 2018). The Utah Supreme Court declined to answer that question. The Utah Supreme Court only held that the economic loss rule applied to bar the fraudulent inducement claim before it because that tort claim was a mere duplication of the party's contract claim. *See HealthBanc*, 435 P.3d at 196. The Utah Supreme Court deferred answering "the broad[er] question of whether there may ever be a fraudulent inducement exception to the economic loss rule in Utah." *Id*. The Utah Supreme Court explained "that the economic loss rule applies where a party's tort claims are entirely duplicative of its contract claims." *Id*. at 198.

The court proceeds in two steps. First, the court addresses whether Plaintiffs' fraudulent inducement claim is a duplication of its contract claim. Concluding that it is not, the court proceeds to the second step—and predicts that the Utah Supreme Court would hold, under the facts of this case, that a fraudulent inducement exception to the economic loss rule exists under Utah law.

a. Plaintiffs' Fraudulent Inducement Claim is Not a Duplication of its Breach of Contract Claim

A close examination of *HealthBanc* is helpful to understand why Plaintiffs' fraudulent inducement claim is not a duplication of its breach of contract claim.

In *HealthBanc* the Plaintiff LLC, through a royalty agreement, "assigned its rights" in a formula to the Defendant corporation. *HealthBanc*, 435 P.3d at 194–95. The Defendant

"specifically requested that the royalty agreement include representations and warranties that" the Plaintiff owned the formula "and associated intellectual property rights." *Id*. at 195. The Plaintiffs agreed to a warrant expressly in the contract representing that it was the "sole and exclusive owner of the entire rights" to the formula, including intellectual property rights *Id*.

After the Plaintiff sued the Defendant, the Defendant "filed a counterclaim, asserting that" the Plaintiff did not own the formula. *Id*. "On that premise," Defendant alleged "counterclaims sounding in breach of contract and tort." *Id*. "The breach of contract claim" alleged that Plaintiff had breached the contract in which Plaintiff had represented that it was the sole and exclusive owner of the formula. *Id*. The "tort claim allege[d] fraudulent inducement on the ground that [Plaintiff] misrepresented that it 'had the exclusive right to use sign or sell the [formula] and its associated intellectual property rights.'" *Id*.

The Utah Supreme Court found that Defendants' "fraudulent inducement claim" arose "out of the same central allegation" as its breach of contract claim—"'the assertion that [Plaintiff] misrepresented it 'had the exclusive right to use assign, or sell the [formula] and its associated intellectual property right.'" *Id*. at 196. In other words, the "fraudulent inducement claim" overlapped "completely with [the] contract claim—in the sense that the alleged fraudulent inducement is also a breach of warranty in the contract." *Id*. In a case like that, "where the party's tort claim is a mere duplication of a contract claim, there is no exception to the economic loss rule." *Id*. The claim for fraudulent inducement was an attempt to assert, as a tort, a contract claim for breach of an express warranty. The alleged fraudulent misrepresentations were subsumed and included in the contract promises.

Here, Plaintiffs argue that "Adler's acts of fraudulent inducement occurred prior to Plaintiffs' execution of the various individual Notes and [confessions of judgments] and were not

restated or duplicated in the Notes and COJs." (ECF No. 55 at 34.) The court agrees with Plaintiffs that they have adequately alleged that the fraudulently inducing statements were made prior to Plaintiffs' execution of the various individual Notes and confessions of judgment. They assert that they would not have entered into the contracts, i.e., the notes and confessions of judgments, had they not been misled by the fraudulent statements. And, accepting the allegations in the Amended Complaint as true, and construing those allegations in the light most favorable to the Plaintiffs, the court agrees that the fraudulent statements were not duplicated in any contract between Plaintiffs and Defendants. The court is satisfied that, at this stage of the proceedings, Plaintiffs' fraudulent inducement tort claim cannot be barred by the economic loss rule on the basis that it is "a mere duplication of" Plaintiffs' contract claim. In other words, *HealthBanc's* holding does not—as Defendants suggest—bar Plaintiffs from bringing their fraudulent inducement claim.

   b.   *Erie* Analysis

 "'When the federal courts are called upon to interpret state law, the federal court must look to the rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule.'" *Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1077 (10th Cir. 2007) (quoting *Johnson v. Riddle,* 305 F.3d 1107, 1118 (10th Cir.2002)). "If there be no decision by that court then federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State." *Id*. "The decision of an intermediate appellate state court 'is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Id*.

As discussed above, the Utah Supreme Court deferred resolving the question as to whether fraudulent inducement may be an exception to the economic loss rule. *HealthBanc*, 435 P.3d at 198 ("[W]e do not foreclose the possibility of a fraudulent inducement exception in some other circumstance. But we conclude that we need not reach that question here.").) But Plaintiffs argue that the Utah Supreme Court "has previously **held** that 'a plaintiff may,' despite the economic loss rule, 'recover purely economic losses in cases involving intentional torts, [including] fraud . . . .'" (ECF No. 55 at 34 (bold added) (quoting *Am. Towers Owners Ass'n, Inc. v. CCI Mech., Inc.*, 930 P.2d 1182, 1190 n. 11 (Utah 1996)).

Here, Plaintiffs rely on a footnote from *American Towers*, a Utah Supreme Court case from 1996, to suggest that the Utah Supreme Court has held that fraud claims fall categorically outside of the ambit of the economic loss rule. The Utah Supreme Court made a similar suggestion in *SME Industries*—again in a footnote—in 2001.  *See SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.*, 28 P.3d 669, 680 n. 8 (Utah 2001) ("However, plaintiffs may recover purely economic losses in cases involving intentional torts such as fraud, business disparagement, and intentional interference with contract.") (quoting *American Towers*, 930 P.2d at 1190 n. 11)). But both *American Towers* and *SME Industries* were decided before the Utah Supreme Court's 2002 decision, *Hermansen v. Tasulis*, 48 P.3d 235 (Utah 2002). In *Hermansen*, the Utah Supreme Court "expressly adopted [an] independent duty-based rule . . . and held that 'the initial inquiry in cases where the line between contract and tort blurs is whether a duty exists independent of any contractual obligations between the parties.'" *Grynberg v. Questar Pipeline Co.*, 70 P.3d 1, 13 (Utah 2003) (quoting *Hermansen*, 48 P.3d at 240)). After expressly adopting the independent duty-based rule in *Hermansen* in 2002, the Utah Supreme Court noted that it does "not find *American Towers* . . . and *SME Industries* persuasive authority regarding the

current state of the economic loss rule in . . . Utah." *Grynberg*, 70 P.3d at 13. Thus, to the extent that Plaintiffs urge this court to rely on *American Towers* as a basis to endeavor to predict that fraudulent inducement is an exception to the economic loss rule in Utah, this court declines to do so.

To predict whether the Utah Supreme Court would hold that Plaintiffs' fraudulent inducement claim is barred by the economic loss rule, this court must predict whether the Utah Supreme Court would recognize "a duty . . . independent of any contractual obligations between the parties." *Hermansen*, 48 P.3d at 240; *see also KTM Health Care Inc. v. SG Nursing Home LLC*, 436 P.3d 151, 170 (Utah Ct. App. 2018) ("Thus, to determine whether the economic loss rule bars a cause of action sounding in tort, we focus on the nature of the duties existing between the parties, and specifically on whether the duties existing between the parties arise as a result of the parties' contract or arise from other non-contractual sources.") Plaintiffs suggest that the Utah Supreme Court would recognize a "duty not to commit fraud that exists independently of any contractual relationship." (*See* ECF No. 55 at 36.) This court articulates the duty differently. Rather than a duty not to commit fraud, this court believes there are at least three reasons to believe that the Utah Supreme Court would hold that Utah recognizes a duty to tell the whole truth.

First, relevant Model Utah Jury Instructions related to fraud directly support the proposition that there exists in Utah a duty to speak the whole truth. *See* Model Utah Jury Instructions 2d CV 1807 ("If [name of defendant] made a statement, then [he] had a duty to tell the truth about the matter, to make a fair disclosure, and to prevent a partial statement from being misleading or giving a false impression." Model Utah Jury Instructions 2d CV 1807. While it is true that the Utah Supreme Court has recognized that the Model Utah Jury Instructions "are

merely advisory and do not necessarily represent correct statements of Utah law," *Jones v. Cyprus Plateau Min. Corp.*, 944 P.2d 357, 359 (Utah 1997), it has also noted that a statement of the law's inclusion in the model instructions "suggests that Utah district courts regularly apply" that statement of the law, "and that people generally have begun to rely on the rule." *See C.R. England v. Swift Transportation Co.*, 437 P.3d 343, 351 (Utah 2019). Based on the Model Utah Jury Instructions recognition of a person's duty to speak the truth, this court predicts that the Utah Supreme Court would hold that such a duty exists in Utah. Such a duty is independent of the promises already included in the contract unless the express promise is included in the contract itself.

Second, the Utah Supreme Court has previously relied on the "Fraud and Deceit" section of the second edition of American Jurisprudence, an encyclopedia of United States law, to determine the elements of constructive fraud. *See Jensen v. IHC Hosps., Inc.*, 944 P.2d 327, 339 (Utah 1997). Based on the Utah Supreme Court's previous reliance on this source to inform Utah law, this court predicts that the Utah Supreme Court would rely on this same source to determine whether Utah law recognizes a duty to speak the truth. That source provides, in relevant part, that "[i]n general, once a person undertakes to speak, that person assumes a duty to tell the whole truth and to make a full and fair disclosure as to the matters about which the person assumes to speak." 37 Am. Jur. 2d *Fraud and Deceit* § 203. Because the Utah Supreme Court has previously relied on the Fraud and Deceit section of the second edition of American Jurisprudence, and because that source indicates that there does exist a duty to speak the truth, the court predicts that the Utah Supreme Court would hold that such a duty does, in fact, exist in Utah.

Third, a Utah Court of Appeals case provides support that the Utah Supreme Court would hold that Utah law imposes a duty to speak the whole truth. In 2018 the Utah Court of Appeals

decided *KTM Health*—a decision issued after the Utah Supreme Court's *HealthBanc* decision. *See KTM Health Care Inc. v. SG Nursing Home LLC*, 436 P.3d 151, 170 (Utah Ct. App. 2018). In *KTM Health,* the Utah Court of Appeals noted that fraud-based claims can "lie outside the scope of the economic loss rule, as long as they are grounded in an independent, non-contractual duty that is separate from the duties agreed upon in the parties' operative contract." *KTM Health*, 436 P.3d at 170. The Utah Court of Appeals later approvingly cited a federal case from the District of Utah that interpreted Utah law and "allow[ed] a claim for fraud in the inducement to proceed because that claim included allegations that the defendant 'committed a tort before the contract was ever entered into' by allegedly misrepresenting 'facts before the' contract was awarded." *KTM Health Care Inc. v. SG Nursing Home LLC*, 436 P.3d 151, 171–72 (Utah Ct. App. 2018) (quoting *Associated Diving & Marine Contractors, L.C. v. Granite Const. Co.*, No. 2:01CV330 DB, 2003 WL 25424908, at *6–7 (D. Utah July 11, 2003)). That federal case did not specifically find that Utah law imposes a duty on speakers to tell the whole truth. But because the Utah Court of Appeals acknowledged that a fraud-based claim can only lie outside of the economic rule if it is based on an independent, non-contractual duty, and because the court implied that it would hold that a fraudulent inducement claim based on misrepresentations made prior to contract formation is not barred by the economic loss rule, it follows that the Utah Court of Appeals would hold that a speaker has a duty to tell the whole truth prior to contract formation. As discussed above, "[t]he decision of an intermediate appellate state court is a datum for ascertaining state law . . . ." *Stickley*, 505 F.3d at 1077 (internal quotation marks omitted) (citation omitted). *KTM Health* is persuasive authority for this court to predict that the Utah Supreme Court would hold that Plaintiffs' fraudulent inducement claim—which alleges misrepresentations made prior to their signing the Notes and Confessions of Judgment—is not

barred by the economic loss rule. Because the existence of an independent duty is a prerequisite to this conclusion, the court predicts that the Utah Supreme Court would hold that Utah law imposes an independent duty on a speaker to tell the whole truth.

For these reasons, this court predicts that the Utah Supreme Court would hold that Utah law imposes an independent duty on a speaker to tell the whole truth.

To summarize, the court finds that Plaintiffs have adequately alleged that Defendants' fraudulently inducing statements were made prior to Plaintiffs' execution of the various individual Notes and confessions of judgment. And the court finds that Plaintiffs' fraudulent inducement claim is not a mere duplication of its breach of contract claim. Finally, this court predicts that the Utah Supreme Court would hold that Defendants owed Plaintiffs' a duty to speak the whole truth. Based on this independent duty, the fraud in the inducement claim can proceed because Plaintiffs have included allegations that the Defendants committed a tort before the Notes and Confessions of Judgment were executed by allegedly misrepresenting facts before Plaintiffs' signed those agreements.

2. Common Law Fraud Claim

As discussed above, Plaintiffs' common law fraud claim relates to both (1) the Agreements and (2) the Notes and Confessions of Judgment. (*See* ACC ¶¶ 181–82, ECF No. 41 at 42.) And as noted above, under Utah law the elements of a fraudulent inducement claim and a common law fraud claim are identical. This court has already held that Plaintiffs' fraudulent inducement claim relating to the Notes and Confessions of Judgment is not barred by the economic loss rule. The court holds that Plaintiffs' common law fraud claim, as it relates to the Notes and Confessions of Judgment, is also not barred by the economic loss rule. The court limits its discussion in this section to the compensation Agreements.

Plaintiffs allege that "Defendants had a policy and practice of inducing Plaintiffs . . . to provide Alder with uncompensated or undercompensated services through representations that were false and/or misleading by omission." (ACC ¶ 177, ECF No. 41 at 40.) Plaintiffs allege that these misrepresentations included "[s]tatements in recruiting brochures and other advertising and recruiting materials that sales representatives from prior sales seasons were earning amounts far in excess of their actual income." (ACC ¶ 178, ECF No. 41 at 41.) Plaintiffs also alleged that Adam Schanz, the CEO of Alder, personally recruited Mr. Vanleeuwen by representing that "as an example of Mr. Vanleeuwen's earning potential, a certain rising-star sales representative for Alder was earning $150,000 per month (even though this individual was actually earning $20,000 per month)." (ACC ¶ 29, ECF No. 41 at 8.) Plaintiffs allege that "Defendants intended for Plaintiffs . . . to rely on these misrepresentations and omissions in deciding to work for Alder, [and] in agreeing to Residual-based compensation plans (including the 2017 Residual Equity Plan) . . . ." (ACC ¶ 29, ECF No. 41 at 42.)

As it did with the Notes and Confessions of Judgment, the court finds that Plaintiffs' have adequately alleged that Defendants' misrepresentations were made prior to Plaintiffs' execution of the compensation Agreements. And, accepting the allegations in the Amended Complaint as true, and construing those allegations in the light most favorable to the Plaintiffs, the court agrees that the misrepresentations were not duplicated in any contract between Plaintiffs and Defendants. The court is satisfied that, at this stage of the proceedings, Plaintiffs' common law fraud claim is not a "a mere duplication of" Plaintiffs' contract claim.

This court has already predicted that the Utah Supreme Court would hold that Utah law imposes an independent duty on a speaker to tell the whole truth. Based on this independent duty, the common law fraud claim is not barred by the economic loss rule because Plaintiffs have

included allegations that the Defendants committed a tort before the compensation Agreements were executed.

III.   <u>Securities Law</u>

 Plaintiffs' Ninth Cause of Action is titled "Securities Fraud Utah Code § 61-1-1, et seq. and Section 10(b) of The Exchange Act and Rule 10b-5)." (ECF No. 41 at 44.) Plaintiffs allege that "Alder created an Unlawful Equity Plan in 2017" that they allege "offers a security under federal and state law." (ACC ¶ 110, ECF No. 41 at 28–29.) More specifically, they allege that "[t]he LLC equity interests offered in the Alder Equity Plan are . . . 'securities' under Utah and federal law." (ACC ¶ 190, ECF No. 41 at 44.) Plaintiffs allege that the Alder Equity Plan constitutes "'a certificate of interest or participation in a profit-sharing agreement,' an LLC interest, and an investment contract." (ACC ¶ 190, ECF No. 41 at 44.)

Defendants argue that "Plaintiffs' Ninth Cause of Action for alleged violations of federal and state securities law should be dismissed" for four reasons: (A) "Plaintiffs' federal securities claim fails to comply with the Private Securities Litigation Reform Act," (B) Plaintiffs' participation in Alder's 2017 Residual Equity Plan did not involve a security," (C) "Plaintiffs have not pleaded any alleged statements or omissions with particularity," and (D) "Plaintiffs have not pleaded any alleged statements or omissions in connection with the offer, purchase, or sale of any claimed security." (ECF No. 55 at 37–49.)

A.   <u>PLSRA Argument</u>

As noted above, Plaintiffs' Ninth Cause of Action is entitled "Securities Fraud Utah Code § 61-1-1, et seq. and **Section 10(b)** of The Exchange Act and Rule 10b-5)." (ECF No. 41 at 44 (bold added).) "A plaintiff suing under Section 10(b) . . . bears a heavy burden at the pleading stage." *In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1333 (10th Cir. 2012). To

properly state a claim for securities fraud, a plaintiff's complaint must allege facts supporting the following:

> (1) the defendant made an untrue or misleading statement of material fact, or failed to state a material fact necessary to make statements not misleading; (2) the statement complained of was made in connection with the purchase or sale of securities; (3) the defendant acted with scienter, that is, with intent to defraud or recklessness; (4) the plaintiff relied on the misleading statements; and (5) the plaintiff suffered damages as a result of his reliance.

*Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1095 (10th Cir. 2003). "Prior to passage of the PSLRA, Fed.R.Civ.P. 9(b) set the standard for the level of particularity required when pleading the elements of a securities fraud claim." *Id.* (citation omitted). "In 1995, Congress heightened the pleading standard for federal securities fraud claims with the passage of the PSLRA." *Id.* "To achieve its purpose, the PSLRA . . . strengthened what is required [to] adequately plead" the first and third elements listed above. *Id.*

The PLSRA "increased the burden on a plaintiff's pleading of the first element of a securities fraud action" by requiring that "'the complaint . . . specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.'" *Id.* (quoting 15 U.S.C. § 78u-4(b)(1)).

Defendants argue that Plaintiffs' securities fraud claim fails to satisfy any of the elements required under the PSLRA. The court agrees that the operative Complaint does not satisfy the first element. The operative Complaint does not "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." Having determined that the operative Complaint does not satisfy the first required element, the court need not

address the remaining elements. Plaintiffs' ninth cause of action brought under Section 10(b) of the Exchange Act is dismissed without prejudice.

B. <u>Defendants Have Failed to Demonstrate that the Residual Plan Does Not Involve a Security</u>

Defendants argue that "Plaintiffs' participation in the 2017 Residual Equity Plan does not qualify as a security under either federal or state law." (ECF No. 60 at 33.) Both parties agree that Utah law is the governing state law on this issue. (*Compare* ECF No. 50 at 21–22 *with* ECF No. 55 at 38.) Because the court dismissed the ninth cause of action brought under section 10(b) of the Exchange Act, the court only addresses Defendants' arguments relating to Utah law.

1. <u>State Law</u>

Plaintiffs argue that "[t]he contract participations are LLC interests that qualify as securities" under Utah law. (*See* ECF No. 55 at 43.) Relevant here, under Utah law, a "'security' means a[n] . . . interest in a limited liability company." Utah Code Ann. § 61-1-13(1)(ee)(i)(Q). To determine whether Plaintiffs' interests in the 2017 Residual Equity Plan constitutes a security as an "interest in" the LLC under state law, this court first examines the relationship between the Equity Plan and the LLC Agreement.

The 2017 Residual Equity Plan defines "Contract Participation" as "a **Participant's** right to receive distributions of cash and other property attributable to a Contract Sale of an Eligible Residual Contract personally generated by such Participant, and related allocations of Profits, Losses, and any items of income, gain, loss, or deduction, all as described in more detail in the LLC Agreement, the Plan and the applicable Award Agreement." (*See* ECF No. 50-1 at 7 (bold added).) "Participant" "means any **Service Provider** who receives an Award under the Plan." (ECF No. 50-1 at 8 (bold added).) "Service Provider" means "a Director, employee, consultant, or other service provider of the Company . . . ." (ECF No. 50-1 at 9 (bold added).) "Award"

means "an award of one or more Contract Participations granted pursuant to the Plan." (ECF No. 50-1 at 5.)

The 2017 LLC Agreement similarly defines "Contract Participation" as "a Contract Participant's right to receive distributions of cash and other property attributable to a **Contract Sale** of an Eligible Residual Contract . . .  personally generated by such Participant, and related allocations of Profits, Losses, and any items of income, gain, loss or deduction . . . ." (ECF No. 50-2 at 11 (bold added).) The LLC Agreement defines "Contract Sale" as "the direct or indirect sale, exchange, or transfer of a **Contract** by the Company . . . to a third party . . . ." (ECF No. 50-2 at 11.) The LLC Agreement defines "Contract" as "an agreement between a Subsidiary and a customer pursuant to which Subsidiary agrees to provide certain security equipment and related services to the customer." (ECF No. 50-2 at 11 (bold added).)

The LLC Agreement defines "Contract Participant" as "the holder of a Contract Participation." (ECF No. 50-2 at 11.) The LLC Agreement defines "Service Provider" as "a Director, officer, employee, consultant . . . of the Company . . . ." (ECF No. 50-2 at 19.) There does not appear to be any dispute that Plaintiffs were considered both (1) "Participants" and "Service Providers" under the Residual Equity Plan and (2) "Contract Participants" and "Service Providers" under the LLC Agreement.

Plaintiffs argue that under the Contract Participations they had a "right to equity ownership in the *revenue streams* stemming from customer contracts" they sold. (*See* ECF No. 55 at 39 (emphasis added).) Apart from conclusory statements, Plaintiffs do not make arguments that they had any ownership interest in Alder Protection Holdings, LLC itself. They only argue that they had an equity interests in the "revenue streams" associated with the accounts they sold. And, as discussed above, under Section 4.5 of the LLC Agreement, "Contract Participants . . .

shall not be deemed to be Members or have any non-economic rights with respect to its Contract Participation . . . ." (ECF No. 50-2 at 31.) But because briefing on this Utah law issue was limited, the court declines to hold that Defendants are entitled to dismissal at this time.

C. Defendants Are Not Entitled to Dismissal Under Rule 9(b)

Defendants argue that "Plaintiffs' securities fraud claims stand or fall with their common law claims." (ECF No. 60 at 37.) As discussed above, Defendants simply ignore those portions of the Plaintiffs' operative Complaint that satisfy Rule 9(b)'s heightened pleading standard. Defendants are not entitled to dismissal under Rule 9(b).

D. "In Connection With" Argument

Defendants argue that "no alleged statements that Plaintiffs attribute to any Defendant coincided with their participation in the 2017 Residual Equity Plan." (ECF No. 50 at 37.) In response, Plaintiffs argue that "all of the Defendants' misrepresentations and omissions were part of the scheme to defraud the Plaintiffs . . . by having them take residual equity interests instead of current compensation, which they otherwise would have received." (ECF No. 55 at 47.) The court agrees that, read as a whole, the entire complaint alleges a scheme designed to persuade Plaintiffs to forego upfront compensation in exchange for residual equity interests—interests that Plaintiffs allege were illusory. The court rejects Defendants' arguments at this stage of the proceedings.

IV. Outside Salesperson Argument

Plaintiffs' first cause of action is entitled "Violation of the Fair Labor Standards Act of 1938 . . . (Failure to Pay Minimum and/or Overtime Wage)." (ECF No. 41 at 33.) Defendants argue that this cause of action fails because Plaintiffs "were outside salespersons." (ECF No. 50 at 37.) Defendants argue that "[t]he FLSA exempts from its minimum pay and overtime pay

requirements those who work 'in the capacity of outside salesman.'" (ECF No. 50 at 28 (quoting 29 U.S.C. § 213(a)(1)). "To qualify as an outside salesperson, an employee must (1) have the primary duty of making sales and (2) be 'customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.'" *Butt v. HF Mgmt. Servs., LLC*, No. 18CV07017AMDLB, 2020 WL 207393, at \*4 (E.D.N.Y. Jan. 14, 2020) (quoting 29 C.F.R. § 541.500(a)). The outside salesman exception "is an affirmative defense, on which the employer bears the burden of proof." *Id*; *see also Fowler v. Incor*, 279 F. App'x 590, 592 (10th Cir. 2008) ("the general rule is that the application of an exemption under the[FLSA is a matter of affirmative defense on which the employer has the burden of proof.")). "In general, affirmative defenses are not properly available on a motion to dismiss for failure to state a claim, unless the 'the defense appears on the face of the complaint.'" *Dejesus v. HF Mgmt. Servs., LLC*, No. 1:12-CV-1298 ERK RML, 2012 WL 5289571, at \*2 (E.D.N.Y. Oct. 23, 2012) (citation omitted).

Defendants argue that they can prevail on their affirmative defense at this stage of the proceedings because "Plaintiffs allege" in their operative Complaint "that 'Alder is a door-to-door sales company' and that 'Alder uses door-to-door sales representatives to sell its products throughout the United States' and that the sales representatives are compensated 'on a commission basis.'" (ECF No. 50 at 29 (citation omitted).)

"To take advantage of the FLSA's exemptions, the employer must offer proof of the 'actual duties' of the employee, not just her job description, title, or the general duties of similarly situated employees." *Dejesus*, 2012 WL 5289571 at \*2. Apart from inviting this court to infer that Plaintiffs' job title was that of "door-to-door salesmen," Defendants have not pointed this court to any section of the Complaint that describes Plaintiffs' duties in detail. "[I]t

is not clear" "how much of" their "role involved making outside sales," as compared to other possible duties. *Id.* Defendants have not met their burden to prevail on their affirmative defense at this stage of the proceedings.

V.     Retaliation Argument

Plaintiffs' sixth cause of action is entitled "FLSA Retaliation." (ECF No. 41 at 38.) The "FLSA prohibits any person from retaliating against an employee for asserting her rights under the Act." *Pacheco v. Whiting Farms, Inc.*, 365 F.3d 1199, 1206 (10th Cir. 2004) Specifically, the FLSA provides:

> [I]t shall be unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee[.]

29 U.S.C. § 215(a)(3) "[A]n employee's unofficial assertion of rights under § 215(a)(3) is also protected activity." *Pacheco*, 365 F.3d at 1206. Plaintiffs allege that they "made numerous oral and written complaints and inquiries to Defendants regarding Alder's failure to pay compensation owed to them." (*See* ACC ¶ 167, ECF No. 41 at 38.)

When a plaintiff "does not offer direct evidence of retaliation, [the Tenth Circuit] analyze[s] a retaliation claim under the burden-shifting framework delineated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1207–08 (10th Cir. 2007). Defendants argue that the court should apply the *McDonnell Douglas* burden shifting framework. (ECF No. 50 at 37.) They therefore implicitly argue that Plaintiffs have alleged no direct evidence of retaliation. Plaintiffs, in Opposition, do not argue that they have alleged direct evidence of retaliation. The court therefore proceeds under the *McDonnell Douglas* burden-shifting framework.

30

"Under the first prong of the *McDonnell Douglas* framework, the employee must establish a prima facie case of retaliation by demonstrating (1) she engaged in protected activity under FLSA, (2) she suffered an adverse employment action contemporaneous with or subsequent to the protected activity, and (3) a causal connection between the protected activity and the adverse employment action." *Pacheco*, 365 F.3d at 1206. Defendants argue that Plaintiffs have not alleged any facts that would satisfy the first and third elements described immediately above. The court addresses only the first element.

Defendants argue that "Plaintiffs do not allege that they ever asserted a statutory right under the FLSA. Rather, Plaintiffs allege only that Vanleeuwen requested information about his compensation that was never provided" (ECF No. 50 at 30.) In opposition, Plaintiffs argue that "the Complaint includes allegations that 'Plaintiffs . . . made numerous oral and written complaints and inquiries to Defendants regarding Alder's failure to pay compensation owed to them.'" (ECF No. 55 at 51 (quoting ACC ¶ 167, ECF No. 41 at 38)). Defendants argue that the paragraph that Plaintiffs cite to "is conclusory," and that "it is not a well-pleaded factual allegation showing that a Plaintiff made a complaint under or relating to the FLSA." (ECF No. 60 at 42.) The court agrees. The paragraph that Plaintiffs chose to rely on in their Opposition to Defendants' Motion is, by definition, a conclusory allegation. "'Allegations that are purely conclusory are not entitled to an assumption of truth.'" *Mitchell v. Bank of New York Mellon*, No. 2:18-CV-00636, 2019 WL 2409658, at *10 (D. Utah June 7, 2019) (citation omitted).

Based on the arguments presented, the court agrees with Defendants that Plaintiffs have not established a prima facie case of retaliation because they have not alleged facts that they engaged in a protected activity under the FLSA. The court dismisses Plaintiffs' sixth cause of action.

VI.   Contract Argument

Defendants argue that "Plaintiffs' Third and Fourth Causes of Action, asserting claims

for breach of the covenant of good faith and fair dealing against Alder should be dismissed . . . ."

(ECF No. 50 at 31.) Defendants argue that Plaintiffs failed to "plead the most basic element of a

breach of contract claim—the identification and the terms of the contract allegedly breached."

(ECF No. 60 at 42.) But as discussed above, Plaintiffs argued that "there may be more recent

Agreements with somewhat different terms that superseded" the 2017 Divisional Sales Manager

Agreements. (ECF No. 55 at 6.) And, as discussed above, Defendants do not dispute that

Plaintiffs may have signed agreements more recently than 2017. (*See* ECF No. 60 at 6–8.)

Further, Plaintiffs have alleged that they "were . . . denied copies of their signed Agreements" at

the time the signed them.  (ACC ¶ 67, ECF No. 41 at 18.)

Considering that Defendants did not dispute that a more recent agreement than the 2017

Divisional Manager Agreement may exist, presuming all of Plaintiffs' factual allegations are

true, and construing them in the light most favorable to the Plaintiffs, the court declines to

dismiss Plaintiffs' breach of contract claims at this time. Plaintiffs' failure to identify the

governing contract may be because Defendants did not provide the most recent contract to them.

Discovery is needed.

VII.   Unjust Enrichment Argument

Defendants argue that "Plaintiffs' Tenth Cause of Action for unjust enrichment should be

dismissed because (1) there are express contracts governing the subject matter of the claimed

unjust enrichment, and (2) with respect to the individual Defendants, Plaintiffs do not plead facts

showing that they conferred a benefit on any of the individual Defendants." (ECF No. 50 at 34.)

In Opposition, Plaintiffs did not address Defendants' argument that the unjust enrichment claim

should be dismissed as to the individual Defendants. (*See* ECF No. 55 at 54.) The court therefore dismisses the unjust enrichment claim as to the individual Defendants.

Plaintiffs argue that their unjust enrichment claim should not be dismissed at this stage of the proceedings because it is "pleaded in the alternative to the contract claims." (ECF No. 55 at 54.) Rule 8(d)(3) of the Federal Rules of Civil Procedure allows Plaintiffs to assert inconsistent claims. Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."). The court agrees. Because the compensation Agreements may be voided, Plaintiffs may be able to recover under an unjust enrichment theory. *C.f.*, *Mitchell v. Wells Fargo Bank*, 355 F. Supp. 3d 1136, 1165 (D. Utah 2018) ("If the contracts are voidable, the . . . Plaintiffs may be able to recover under an unjust enrichment theory.")). It is premature to dismiss Plaintiffs' unjust enrichment theory at this stage of the proceedings, so the court declines to do so.

<u>Conclusion</u>

I.      Defendants' Motion to Dismiss Plaintiffs' class and collective action claims is DENIED.

II.     Defendants' Motion to Dismiss Plaintiffs' common law fraud claims is DENIED.

III.    Defendants' Motion to Dismiss Plaintiffs' securities law claims is GRANTED in part and DENIED in part.

    a.   Defendants' Motion to Dismiss Plaintiffs' claims for relief under federal law is GRANTED.

    b.   Defendants' Motion to Dismiss Plaintiffs' claims for relief under Utah law is DENIED.

IV.     Defendants' Motion to Dismiss Plaintiffs' FLSA minimum wage and overtime claims is DENIED.

V.      Defendants' Motion to Dismiss Plaintiffs' FLSA retaliation claim is GRANTED.

VI.     Defendants' Motion to Dismiss Plaintiffs' contract claims is DENIED.

VII.    Defendants' Motion to Dismiss Plaintiffs' unjust enrichment claim is DENIED.

DATED this 5th day of February  2021.

**BY THE COURT:**

_____
Honorable Clark Waddoups
United States District Judge