refer
Matthew A. Steward (#7637)
Victoria B. Finlinson (#15103)
Keith Woodwell (#7353)
**CLYDE SNOW & SESSIONS**
One Utah Center, 22nd Floor
201 South Main Street
Salt Lake City, Utah  84111-2216
Telephone (801) 322-2516
mas@clydesnow.com
vbf@clydesnow.com
kmw@clydesnow.com
*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SHADRACH ENNIS, NICOLAAS VANLEEUWEN, and TERRANCE JESCLARD, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> ALDER PROTECTION HOLDINGS, LLC, a Delaware limited liability company; ALDER HOLDINGS, LLC, a Delaware limited liability company; COVE SMART, LLC, a Delaware limited liability company; ADAM SCHANZ, an individual; ADAM CHRISTIAN, an individual; KYLE DEMORDAUNT, an individual; DANE MCCARTNEY, an individual; and DOES I–X, <br><br> Defendants. | **JOINT MOTION FOR APPROVAL OF COLLECTIVE ACTION SETTLEMENT** <br><br><br> Case No. 2:19-cv-00512 <br><br><br> District Judge Clark Waddoups <br><br> Magistrate Judge Dustin Pead |

Plaintiffs Shadrach Ennis, Terrance Jesclard, and Nicolaas Vanleeuwen (collectively, "Named Plaintiffs") and Defendants Adam Schanz, Alder Protecting Holdings, LLC, Alder

Holdings, LLC, Cove Smart, LLC, Kyle DeMordaunt, Adam Christian, and Dane McCartney (collectively, "Defendants"), through their counsel, file this Joint Motion for Approval of Collective Action Settlement and state as follows:

## I. RELIEF REQUESTED

The Parties respectfully move this court for an Order: (1) preliminarily approving the Collective Action Settlement Agreement attached as Exhibit 1 ("Settlement Agreement") as fair and reasonable to become finally approved upon expiration of the opt-in plaintiffs' objection period; (2) appointing Named Plaintiffs as class representatives for those individuals who have opted in to participate as a member of the FLSA collective action claims ("Collective Action Members"), if required, and approving the proposed distribution calculation method of the Gross Settlement Amount ("GSA"); (3) appointing Matthew Steward, Keith M. Woodwell, and Victoria Finlinson of Clyde Snow & Sessions, P.C. ("Class Counsel") as counsel for the Collective Action Members and approving an attorney fee distribution of 33.33% of the GSA allocated to the Collective Claims and litigation costs, if required; (4) approving Phoenix Class Action Administration Solutions as the appointed settlement administrator and the estimated administration costs of $10,000; (5) authorizing Notice to Collective Action Members with 45-day deadlines for Exclusion requests and Objections; and  (6) if required by the Court, scheduling a fairness hearing.

## II. STATEMENT OF FACTS

### A. Procedural History

On July 22, 2019, the Named Plaintiffs filed their original complaint. In Plaintiffs' Third Amended Collective/Class Action Complaint ("Third Amended Complaint"), the Named

Plaintiffs asserted Defendants (1) violated the Fair Labor Standards Act, 29 U.S.C. 201, et seq.; (2) violated Utah's Payment of Wages Act, Utah Code Ann. § 34-28-1 et seq.; (3) breached contracts; (4) breached the implied covenant of good faith and fair dealing; (5) violated the Utah Sales Representative Commission Payment Act, Utah Code Ann. § 34-44-101, et seq.; (6) committed common law fraudulent inducement; (7) committed common law fraud; (8) committed securities fraud in violation of Utah Code Ann. § 61-1-1, et. seq. and Section 10(b) of the Securities and Exchange Act; (9) has been unjustly enriched at Plaintiffs' expense; (10) actions require certain agreements and notes to be declared invalid; and (11) retaliated in violation of the Fair Labor Standards Act, 29 U.S.C. 215(a)(3). [1] The Named Plaintiffs also asserted a nationwide collective action under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA") and a class action under Fed. R. Civ. P. 23(b)(3) for each of the state law claims.[2] Defendants have denied the substantive allegations included in the Third Amended Complaint and have denied that certification of the FLSA collective action and certification of a Rule 23 class action is appropriate.

On September 29, 2021, Defendant Alder Holdings, LLC asserted counterclaims against the Named Plaintiffs alleging breach of contract and other claims.[3] Named Plaintiffs have denied the substantive allegations of Alder's Counterclaim.

There were multiple motions to dismiss filed by the Parties.[4] Plaintiff Shawn Harding's claims were dismissed, but the Third Amended Complaint claims survived the Defendants'

---

[1] Doc. 157.
[2] Doc. 157.
[3] Doc. 164.
[4] Docs. 22, 48, 61, 167.

motion to dismiss.[5] Additionally, Defendants filed a motion for partial summary judgment regarding the collective claims, the putative class claims, and certain of the Named Plaintiffs' claims which is pending.[6]

On March 3, 2021, the Court conditionally certified the FLSA class.[7] On August 31, 2023, Defendants moved to have the Court decertify the FLSA class, which remains pending.[8] Many Plaintiffs "opted in" to the FLSA class. On August 31, 2023, Named Plaintiffs moved to certify a class under Fed. R. Civ. P. 23(a) for claims arising under state law. Defendants have opposed certification of a Rule 23(a) class. The class certification motion remains pending.[9]

On September 30, 2021, the Court issued the Order Granting Motion for Equitable Tolling of the Statutes of Limitations of FLSA Collective Action Claim, which tolled the statute of limitations from September 23, 2020 until June 8, 2021.[10]

**B. Discovery**

During the case, the Parties prepared and exchanged Initial Disclosures under Rule 26, of the Federal Rules of Civil Procedure and had information sufficient to assess the potential damages. The Parties also engaged in formal discovery and exchanges of information through the mediation process. Several depositions were taken, expert reports were exchanged. There was a robust motion practice involving the discovery and experts exchanged.

---

[5] Docs. 62, 82.
[6] Doc. 265.
[7] Doc. 93.
[8] Doc. 298.
[9] Doc. 297.
[10] Doc. 166

**C. Settlement Negotiations**

After the Court's orders on some of the motions to dismiss and substantial discovery, the Parties began settlement discussions and prepared for and participated in an unsuccessful mediation in October of 2022. Defendants' counsel and Named Plaintiffs' counsel engaged in numerous settlement discussions following the unsuccessful mediation and exchanged many offers and counteroffers. After many months of negotiations, the Parties were able to enter into a Binding Settlement Term Sheet outlining the Parties' key settlement terms on December 23, 2024. The Parties have since negotiated and executed the attached Settlement Agreement, which contains the terms of the Parties' settlement.

**D. Terms of Settlement**

**1. Certification of FLSA Opt-In Class for Purposes of the Settlement**

Defendants have agreed to settle with the Named Plaintiffs as well as those members of the FLSA collective action claims who individually and timely opted in to join the FLSA collective action and are identified as Exhibit A of the Settlement Agreement ("Collective Action Members"). These individuals opted in following the Court's conditional certification and notices being sent out. However, those who have previously settled with Defendants opted-in twice, or have time-barred claims according to the Court's order, as seen on Exhibit 2, have been excluded from the settlement.

The Parties have not reached a settlement to resolve the putative Rule 23(a) class action claims but have agreed to dismiss without prejudice all putative class action claims, including those which potentially could be certified pursuant Fed. R. Civ. P. 23(a) under a pending motion.

As such, it is no longer necessary for the Court to certify any classes pursuant Fed. R. Civ. P. 23(a).

**2. Opt-In and Objection Period**

The Collective Action Members will be mailed Notice Postcards, in the form attached to the Settlement Agreement as Exhibit A. The Notice Postcards will inform the recipients of the Settlement Agreement and how to object during a 45-day objection period (or other time period approved by the Court).

**3. Settlement Payments to Collective Action Members**

The Parties have agreed to settle for a Gross Settlement Amount of $1,250,000 ("GSA"). From the GSA, 80% ($1,000,000) is attributable to the Named Plaintiffs' eleven individual claims and other considerations, with only a smaller portion attributable to their individual FLSA claims. See Settlement Agreement, § 5. From the GSA, 20% ($250,000) is attributable to the FLSA collective claims of the Collective Action Members, which is inclusive of attorneys' fees and costs. After reducing the Collective Action Member's portion of the GSA by attorneys' fees (33.33% or $83,325), litigation costs and expenses ($25,853.40), and the settlement administrator's fees (estimated quote of $10,000), the resulting amount is $130,821.60 and constitutes the "Distribution Amount" to the Collective Action Members.

As set forth in the Settlement Agreement, the parties agreed on a fair method for paying the Distribution Amount to the Collective Action Members. Specifically, each Collective Action Member will receive a prorated portion of the Distribution Amount in proportion to the amount of time they worked for Alder.

Settlement checks to the Collective Action Members must be cashed within 60 days of issuance. The funds not drawn upon after 60 days will be redistributed to the Collective Action Members who deposited or cashed their settlement checks, provided that a second round of distributions is economically feasible. If redistribution is not economically feasible (i.e. if the remaining funds are not sufficient to cover the administration costs of redistribution), the remaining funds will be donated to charity. *See* Settlement Agreement, § 7.

### 4. Release by Collective Action Members

By operation of the entry of the Order approving the Settlement Agreement, the Collective Action Members will release Defendants of any liability for all claims and causes of actions asserted by the members in the Action as provided for in the Settlement Agreement. *See* Settlement Agreement, § 3. The Collective Action Members are not releasing or waiving any claims they may have for unemployment insurance, workers' compensation benefits, or any other claims that cannot be waived by law. *Id.* Additionally, only the Named Plaintiffs' released claims, and not the Collective Action Members' released claims, would include "all claims and causes of action, whether known or unknown, matured or contingent, asserted or unasserted that existed or may have existed from the beginning of time up to and including the date on which the Settlement Agreement is approved." *Id.*

### III. Arguments & Authorities

The Named Plaintiffs have agreed to dismiss all of their claims with prejudice, and to dismiss all of the putative class action claims brought pursuant to Fed. R. Civ. P. 23, for which no class has been certified, without prejudice. As such, only the settlement of the FLSA collective action brought by the Named Plaintiffs and the Collective Action Members requires

Page 7 of 22

Court approval. The Court should (1) approve the collective action settlement as it satisfies the FLSA requirements and (2) approve attorneys' fees and costs as they are fair and reasonable.

**A. An FLSA Collective Action Settlement Should be Approved When the FLSA Requirements are Satisfied.**

   **1. A Conditional FLSA Class Certification Satisfies the FLSA's Opt In and "Similarly Situated" Requirements for FLSA Class Action Settlement Purposes.**

In order to participate in a collective action settlement brought under 29 U.S.C. § 216(b), a potential plaintiff must affirmatively "consent in writing" in order to become a party to the FLSA collective action. If a potential plaintiff does nothing, he will not be bound by the outcome, favorable or unfavorable.[11] This "opt in" feature creates a "fundamental irreconcilable difference" between an FLSA collective action and a class action brought pursuant to Rule 23.[12]

Courts in other jurisdictions differ as to whether a "final" certification of a collective action class, after conditional certification has been obtained, is necessary before approving an FLSA collective action settlement.[13] However, this Court, in a case not reported, adopted the *ad hoc* approach and held that "final" certification is unnecessary for approval of collective action settlement, in line with Tenth Circuit guidance.[14]

---

[11] *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 721 (E.D. La. 2008); *Shushan v. University of Colorado at Boulder* 132 F.R.D. 263, 264 (D.Colo.1990).
[12] *Id.*
[13] *See e.g. Murillo v. Pac. Gas & Elec. Co.,* No. CIV. 2:08–1974 WBS GGH, 2010 WL 2889728, at *2 (E.D. Calif. July 21, 2010) (requiring "final" certification); *In re Wells Fargo Wage and Hour Emp't Practices Litig.*, 18 F. Supp. 3d 844, 853 (S.D. Tex. May 12, 2014) (explaining courts in the Fifth Circuit have never imposed a final certification requirement for settlement and it is not appropriate as it applies to decertification motions filed by Defendants at the close of discovery and not settlement.).
[14] See *Cazeau v. TPUSA, Inc.*, No. 218CV00321RJSCMR, 2020 WL 3605652, at 3 (D. Utah July 2, 2020) (Not Reported); *Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir.2001).

Although the Tenth Circuit has not directly addressed the issue of whether "final" certification is necessary to approve a collective action settlement, but in general has approved a two-step *ad hoc* approach to determining whether plaintiffs are "similarly situated" for purposes of FLSA Section 216(b).[15] Under this *ad hoc* approach, a court typically makes a conditional determination whether a collective action should be certified for purposes of sending notice of the action to potential class members, and then at the close of discovery (often prompted by a motion to decertify), the court makes a second collective action determination using a stricter standard of "similarly situated."[16] During this second stage analysis, the court considers several factors including (1) the employment settings of individual plaintiffs; (2) various defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations.[17]

A court in this District has previously adopted the two-step *ad hoc* approach and held a "final" certification is not a prerequisite to approving a collective action settlement agreement.[18] The court noted that the FLSA does not require certification, instead, it requires only that plaintiffs affirmatively provide consent (opt in) and that they be "similarly situated."[19] After reasoning that "final" certification is simply a mechanism to decertify the class and plaintiffs can opt in without conditional certification, the Court held that a conditional certification under the

---

[15] *Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir.2001)
[16] *Thiessen*, 267 F.3d at 1102–03
[17] *See id*. at 1103.
[18] *Cazeau,* No. 218CV00321RJSCMR, at 2-3 (D. Utah July 2, 2020) (Not Reported).
[19] *Id*. at 3.

*ad hoc* approach satisfies the FLSA's "Similarly Situated" requirement and final certification is unnecessary in the settlement context.[20]

### 2. The FLSA Requires a Collective Action Settlement to Resolve a Bona Fide Dispute and be Fair and Reasonable to be Approved, but Not a "Fairness" Hearing.

FLSA collective action settlements require the approval of the Department of Labor or a federal district court.[21] Public policy favors the settlement of class action lawsuits.[22] Unlike class settlements under Federal Rule of Civil Procedure 23, Section 216(b) does not require a "fairness" hearing on a proposed settlement and Rule 23's requirements are not directly applicable to a collective action pursuant to § 216(b).[23]

"[A] district court may enter a stipulated judgment [under the FLSA] after scrutinizing the settlement for fairness."[24] If the settlement reflects a reasonable compromise over issues such

---

[20] *Id.*

[21] *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982).

[22] *Geiger v. Sisters of Charity v. Leavenworth Health Sys., Inc.*, No. 14-2378, 2015 U.S. Dist. LEXIS 97362 at *5 (D. Kan. July 27, 2015).

[23] *Moore v. Ackerman Inv. Co.*, 2009 WL 2848858, at *2 (N.D. Iowa Sept. 1, 2009); *See also, The Fair Labor Standards Act, Third Edition*, Volume II, Ch. 17 X.D, p. 17-201 (citing cases) ("In cases that only present FLSA claims, a fairness hearing is not required. A collective action settlement may be brought to the court on a single motion to approve the settlement and enter a stipulated judgment.") (Citing cases); *5 James Wm. Moore et al., Moore's Federal Practice* ¶ 23.04[1] (citing cases) ("Rule 23 is inapplicable to proceedings under the FLSA."); *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 721 (E.D. La. 2008) ("The determination of absent class members' rights that results from resolution of a class action presents significant due process concerns, which drive in large part the requirement of Rule 23 that a court approve any settlement. Because all those who will be bound by resolution of a collective action have consented to participate in the suit, and the rights of those who have not so 'opted-in' will not be determined, the same due process concerns are not present in the consideration of whether to approve settlement of a FLSA collective action.").

[24] *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353, 1355 (11th Cir.1982); *see also id.* at 1355 ("there is only one context in which compromises of FLSA back wages or liquidated damages may be allowed: a stipulated judgment entered by a court which has determined that a

as FLSA coverage or computation of back wages that are actually in dispute, the Court may approve the settlement to promote the policy of encouraging settlement of litigation.[25]

**B. The Court Should Approve the Parties' Proposed Settlement Agreement Because the FLSA Requirements are Satisfied.**

    **1. The Court's Conditional FLSA Class Certification Satisfied the FLSA's Opt In and "Similarly Situated" Requirements.**

The Court provided a conditional FLSA class certification that identified when a plaintiff would be similarly situated.[26] Following the conditional certification and issuance of Notices of Opportunity to Join Collective Action to Collective Class Members, the individuals identified on Exhibit A to the Settlement Agreement timely opted into the collective action. Thus, the FLSA's opt in and "similarly situated" requirements have been satisfied, and the Settlement Agreement can be approved without a "final" certification of the collective action members identified on Exhibit A of the Settlement Agreement. However, the parties ask that the Court decertify those who opted in but have previously settled with Defendants or have time barred claims despite the order tolling the statute of limitations, as identified on Exhibit 2.

If the Court determines a "final" certification is appropriate, such should be granted to include those individuals identified on Exhibit A for the reasons outlined in the Named Plaintiffs' Opposition to Defendants' Motion to Decertify Collective Action.[27]

---

settlement proposed by an employer and employees, in a suit brought by the employees under the FLSA, is a fair and reasonable resolution of a Bonafide dispute over the FLSA provisions").

[25] *See Lynn's Food Stores*, 679 F.2d at 1354; *Gambrell v. Weber Carpet, Inc.*, No. CIV.A. 10-2131-KHV, 2012 WL 5306273, at *2 (D. Kan. Oct. 29, 2012).

[26] Doc. 93.

[27] Doc. 315.

2.  **The Settlement Agreement is a Resolution of a Bona Fide Dispute and is Fair and Reasonable.**

    a.  **The action represents a bona fide dispute between the Parties.**

There are many factors a court may consider to determine whether a bona fide dispute exists, which may include: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employee; (3) the employer's reasons for disputing the employee's right to a minimum wage or overtime; (4) the employee's justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage.[28] These factors are addressed generally below.

**Nature of Dispute**. In addition to the wide-ranging allegations explained in the Named Plaintiffs' Third Amended Complaint[29] and Opposition to Defendants' Motion for Summary Judgment,[30] Plaintiffs claimed that Defendants had a company-wide pattern and practice of misclassifying Plaintiffs and Collective Action Members as independent contractors and failing to pay them minimum wage and overtime as required under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (the "FLSA").[31]

---

[28] *Felix v. Thai Basil At Thornton, Inc.*, 2015 U.S. Dist. LEXIS 62020, *3 (D. Colo. May 6, 2015); *Cazeau v. TPUSA, Inc.*, No. 218CV00321RJSCMR, at 4 (D. Utah July 2, 2020).
[29] Doc. 157.
[30] Doc. 274.
[31] Doc. 315.

**Employer's Business & Employee's Work**.  Alder engages in selling, installing, and servicing electronic security equipment and compensates certain sales representatives on a commission basis.[32] Many claimed employees are door-to-door sales representatives.[33]

**Employer's Claimed Reasons**. Defendants have raised various defenses to the FLSA class action claims in Defendants' Answer and Affirmative Defenses to Third Amended Complaint,[34] Defendants' Motion for Partial Summary Judgment,[35] and Defendants' Motion to Decertify Collective Action,[36] which are incorporated herein.

**Employee's Justification**. Named Plaintiffs have raised various justifications to support the unpaid minimum wage and overtime wages FLSA class action claims in Plaintiffs' Third Amended Complaint, and Plaintiffs' Opposition to Defendants' Motion for Summary Judgment,[37] and Plaintiffs' Opposition to Defendants' Motion to Decertify Collective Action,[38] which are incorporated herein.

**Estimated Wages**. Based on Alder's published 2014 average sales rep hybrid compensation model, 20 week summer season, and the typical sales representative 70 hour work week, Plaintiffs estimated overtime wages as follows:

---

[32] Doc. 165, ¶ 14.
[33] Doc. 157, ¶¶ 14, 25.
[34] Doc. 165.
[35] Doc. 265.
[36] Doc. 298.
[37] Doc. 274.
[38] Doc. 315.

4916-6099-5617, v. 2

- Compensation per week $1,820 ($36,400 / 20 weeks)
- Regular rate of pay $26.00/hour ($1,820 / 70 hours)
- Additional overtime rate of $13.00 ($26.00 /2)
- Unpaid overtime per week $390.00 ($13.00 x 30 overtime hours)
- Total overtime per rep per summer $7,800.00 ($390.00 x 20 weeks)
- Liquidated damages (29 U.S.C. § 216(b)) per summer $7,800.00
- Attorney's fees (29 U.S.C. § 216(b)) (accruing)
- Pre- and post-judgment interest to be calculated at the statutory rate

Plaintiffs' expert report previously filed with the court calculated Collective Action Members' unpaid overtime wages at $1,863,03 without accounting for any statute of limitations reductions. The Collective Action Members are unlikely to receive any damages on any minimum wage claim. Defendants dispute that any wages are owed and dispute that the calculations of Plaintiffs' expert are accurate. For the foregoing reasons there is a bona fide dispute both legally and factually relating to whether Defendants conduct violated the law.

**b. The Settlement Agreement is Fair and Reasonable Based on the Attendant Risks of Continued Litigation.**

To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employees and must not frustrate the FLSA policy rationales.[39] Some factors a court may consider to determine if a settlement is fair and reasonable include: (1) defendants' business, (2) the type of work performed by plaintiffs, (3) the facts underlying plaintiffs' reasons for justifying their claims, (4) defendants' reasons for disputing plaintiffs' claims, (5) the relative strength and weaknesses of plaintiffs' claims, (6) the relative strength and weaknesses of defendants' defenses, (7) whether the parties dispute the computation of wages owed, (8) each party's estimate of the number of hours worked and the applicable wage, (9) the maximum amount of recovery to which plaintiffs claim they would be entitled if they successfully proved their claims,

---

[39] *Davis v. Crilly*, 292 F. Supp. 3d 1167, 1173 (D. Colo. 2018).

(10) whether the proposed settlement was fairly and honestly negotiated, (11) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt, (12) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation, and (13) the judgment of the parties that the settlement is fair and reasonable.[40]

Because there is some overlap between these factors and those for determining if there is a bona fide dispute, the Parties incorporate by reference the relevant analysis above instead of repeating themselves.  The bona fide dispute demonstrates risks and serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt.

Additionally, as noted above, the Settlement Agreement was negotiated over a lengthy arms' length process, substantial discovery occurred prior to the Settlement Agreement, and the Parties' judgment is that the Settlement Agreement is fair and reasonable.

**C. The Court Should Approve the Requested Attorneys' Fees, Costs, and Administration Costs Because Such are Fair and Reasonable.**

**1.  The Requested Attorneys' Fees are Fair and Reasonable and Should be Awarded.**

As a result of the settlement, and as provided for in the Settlement Agreement, the Parties have agreed to settle for a Gross Settlement Amount of $1,250,000 ("GSA") with 20% ($250,000) attributable to collective claims of the Collective Action Members and the Named Plaintiffs' payments attributable to their individual FLSA claims including within the lumpsum

---

[40] *Cazeau v. TPUSA, Inc.*, No. 218CV00321RJSCMR, 2021 WL 1688540, at 3-4 (D. Utah Apr. 29, 2021) (Not Reported); *Whittington v. Taco Bell of Am., Inc.*, No. 10-CV-01884-KMT-MEH, 2013 WL 6022972 (D. Colo. Nov. 13, 2013) (Not Reported); *Lucas v. Kmart Corp.,* 234 F.R.D. 688, 695 (D. Colo. 2006) ("[c]ounsels' judgment as to the fairness of the agreement is entitled to considerable weight."); see also *Marcus v. Kansas Dept. of Revenue*, 208 F.Supp.2d 1179, 1183 (D. Kan. 2002).

payments for all their individual claims. Class Attorneys are seeking attorneys' fees in the amount of 33.33%. This request is fair and reasonable under the applicable law in this Circuit.

In class actions where a common fund is created for settlement, the majority of courts, including the Tenth Circuit, apply a "percentage of recovery" or "percentage of the fund" approach to fee awards.[41] At 33.33% of the fund, the proposed fee award in this case would be well within the range of reasonable percentage fee awards in this Circuit.[42]

In assessing the reasonableness of attorney fee awards in class actions, courts within the Tenth Circuit have considered twelve factors identified by the Fifth Circuit in *Johnson v. Georgia Housing Express, Inc.* 488 F.2d 714 (5th Cir. 1974). The *Johnson* factors include: (1) the time and labor required, (2) the novelty and difficulty of the question presented by the case, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorneys due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) any time limitations imposed by the client or the circumstances,

---

[41] *See Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994); *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir. 1993).

[42] *See, e.g., Whittington v. Taco Bell of Am., Inc.*, 2013 WL 6022972, *6 (D. Colo. Nov. 13, 2013) ("Together the fees and costs amount to approximately 39% of the fund as a whole. This is within the normal range for a contingent fee award."); *see Lucken Family Ltd. Partnership, LLLP v. Ultra Resources, Inc.*, 2010 WL 5387559, at *5-*6 (D. Colo. Dec. 22, 2010) ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class.") (citing, inter alia, *Vaszlavik v. Storage Technology Corp.*, 2000 U.S. Dist. LEXIS 21140, at *10 (D. Colo. Mar. 9, 2000)) ("requested fee of 30% of the settlement is well within the ordinary range of common fund awards," and "[a] 30% common fund award is in the middle of the ordinary 20%-50% range and is presumptively reasonable"); *Cimarron Pipeline Construction, Inc. v. National Council on Compensation*, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) (noting that "[f]ees in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingent fee basis," and finding that "attorneys' fees of 33 1/3% of the common fund created by the efforts of counsel for the Class are in line with comparable other cases, [and] consistent with prevailing case law of this circuit").

(8) the amount involved and the results obtained, (9) the experience, reputation and ability of the

attorneys, (10) the "undesirability" of the case, (11) the nature and length of the client

relationship, and (12) awards in similar cases.[43] "[R]arely are all of the Johnson factors

applicable."[44] The applicable *Johnson* factors are addressed generally throughout this motion.

Class Counsel will address below a few of the factors in support of an award of the requested

fee.

**Time and Labor Required.** To date, Class Counsel has expended over 2,725 hours in

prosecuting this case and bringing it to a successful settlement and conclusion. Exhibit 3. The

requested fee of 33.33% will not cover approximately half of the Class Counsel's time

In sum, the "time and labor" factor supports the proposed fee award.

**Novelty and Difficulty of the Case and Expertise of Legal Counsel.** Class Counsel

drafted the various complaints which included careful litigation strategy of claims under the

FLSA. This case involved unique facts where the alleged unpaid time wages occurred over the

employers' heavy workload summer seasons and other changing workload periods. The recovery

per employee was therefore limited by the amount of time the class members worked during

summer seasons or other workload periods. Fashioning a litigation strategy and settlement under

these set of facts presented unique challenges. Moreover, Defendant presented various arguments

in summary judgment, decertify class, and dismissal motions.

The skill requisite to perform the legal service properly also supports the award of

attorneys' fees, as class action overtime cases tend to "involve a specialized area of the law

---

[43] *Johnson*, 488 F.2d at 717-19.
[44] *Uselton*, 9 F.3d at 854.

which is often complex and difficult, where some degree of extra skill is needed to litigate the cases properly." [45]

**Preclusion of Other Employment by the Attorneys.** As discussed above and provided in the attached declaration, Class Counsel dedicated over 2,725 hours to this case over the last five years. Exhibit 3. As a result of the time spent on this matter, the Class Attorneys' ability to accept and work on other cases was impeded. Exhibit 3. Thus, this factor also weighs in favor of the fee request.

**Customary Fee / Awards in Similar Cases.** Class Counsel seeks to be paid one third of the settlement fund as its contingent fee in this matter. In contingent class action cases, a one third contingent fee is normal and routine.[46]

Thus, the fee request here is customary.

**Whether the Fee is Fixed or Contingent.** The risk of nonpayment to Plaintiffs and the Settlement Class was high in this case. As discussed above, this case poses a number of factual and legal issues, which created risks as to both liability and damages. Despite these risks, Class Counsel took this case on a pure contingency, and would have received no compensation if they did not obtain a positive result for the Class. As of the date of filing, Class Counsel has expended more than 2,725 hours on the instant matter, without having received any compensation for such

---

[45] *Farley v. Family Dollar Stores, Inc.*, No. 12-CV-00325-RM-MJW, 2014 WL 5488897, at *4 (D. Colo. Oct. 30, 2014).

[46] *See e.g. Lucken Family Ltd. P'ship, LLP v. Ultra Resources, Inc.*, 2010 WL 5387559, *5-6 (D. Colo. Dec. 22, 2010) ("The customary fee award to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class."); *Horton v. Leading Edge Mktg. Inc.*, 2008 WL 323222, *3 (D. Colo. Feb. 4, 2008) (noting that "[m]ost fees" range "between 20% and 40% of the gross monetary settlement."); *see also In re Safety Components, Inc. Sec. Litig.*, 166 F Supp. 2d at 102 (granting award of 33 1/3% in common fund case and citing to ten cases holding the same).

work or promise of compensation for such work. In addition, Class Counsel incurred more than $129,267 in litigation costs, with only $43,284.47 that would have been reimbursed to Class Counsel in the case of a loss. Exhibit 3.

Thus, there was substantial risk of Class Counsel receiving no compensation for their time, as well as risk the expenses incurred for the benefit of class members would go unreimbursed. Thus, the contingent nature of Class Counsel's representation also weighs in favor of awarding the requested fee.

**The "undesirability" of the case.** A case is undesirable when it requires a significant time and financial investment coupled with risk of no payment.[47] Here, Class Counsel spent north of 2,725 hours litigating this matter for over five years. Class Counsel has also spent more than $85,982.56 in out-of-pocket costs litigating this matter. Due to the contingent nature of Class Counsel's representation, such cost and time would have been lost if there was no recovery for the class.

Thus, this factor also weighs in favor of the fee request.

In sum, Class Counsel's request for one third of the settlement amount attributable to the Collective Action Members is reasonable and should be awarded in this case.

## 2. The Expenses Incurred in Prosecuting this Action are Reasonable and Should be Awarded.

In the course of the proceedings, Class Counsel has incurred significant out-of-pocket costs including, but not limited to: court filings, copying and management of documents, online legal research, process server fees and expenses, mediation fees, travel costs, and other incidental

---

[47] See In re Shell Oil Refinery, 155 F.R.D. 552, 572 (E.D. La. 1993).

expenses directly related to this action. Exhibit 3. If the costs were apportioned similar to the settlement award, the Collective Action Members' share of the costs is approximately $25,853.40. Defendants do not oppose this request for costs.

**3. The Class Administrator's Costs are Reasonable and Should be Awarded.**

The bid provided by Phoenix Class Action Administration Solutions is competitive and will cover the costs of the mailing of settlement checks, the notice postcards, and the tax reporting of such payments. The estimated cost of $10,000 is reasonable in this case.

## CONCLUSION

Based on the foregoing arguments and authorities, the Parties respectfully request that the Court enter the attached proposed order granting approval of the class action Settlement Agreement, the relief requires herein, and any other relief which the Court may deem appropriate. The Parties are ready and willing to participate in oral arguments and will defer to the Court as to whether oral argument would be helpful to the Court in ruling on this motion.

DATED this 27th day of February 2025.

CLYDE SNOW & SESSIONS

/s/ *Matthew A. Steward*
Matthew A. Steward
Victoria B. Finlinson
Keith M. Woodwell

*Attorneys for Plaintiffs*

Mitchell Barlow & Mansfield, P.C.

/s/ *J. Ryan Mitchell*
J. Ryan Mitchell
Christopher A. Langston
Colby Tinney
*Attorneys for Defendants*
Signed by Matthew A. Steward with e-mail permission of J. Ryan Mitchell

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of February, 2025, I electronically filed the fore-going document with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all parties of record.

_/s/ Adam Petersen_____
Legal Assistant

4916-6099-5617, v. 2