IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SHADRACH ENNIS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ALDER PROTECTION HOLDINGS, LLC, *et al.*,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER ON RENEWED MOTION FOR APPROVAL OF COLLECTIVE ACTION SETTLEMENT**<br><br><br>Case No.  2:19-cv-512-CW<br><br>Hon. Clark Waddoups |

Plaintiffs Shadrach Ennis, Nicolaas Vanleeuwen, and Terrance Jesclard[1] (collectively, the "Named Plaintiffs" or "NPs"), commenced this action on July 22, 2019, alleging, among other things, that defendants Alder Protection Holdings, LLC and Alder Holdings, LLC, companies engaged in the business of selling, installing, and servicing electronic security equipment (together "Alder"), and defendants Adam Schanz, Adam Christian, Kyle DeMordaunt, Dane McCartney, and Cove Smart, LLC (collectively the "Individual Defendants" and together with Alder the "Defendants"), failed to pay all similarly situated sales representatives a minimum

---

[1]    Initially there was a fourth named plaintiff, Shawn Harding.  Pursuant to a stipulation of dismissal, all claims concerning Mr. Harding were dismissed with prejudice. [*See* ECF No. 62.]

wage and overtime as required under the Fair Labor Standards Act ("FLSA"). Alder is a door-to-door sales company that relies on individual sales representatives to sell its alarm services and products on a commission basis to residential customers throughout the United States.

This matter is now before the Court for consideration of the parties' Renewed Joint Motion for Approval of Collective Action Settlement (the "Renewed Motion") [ECF No. 369].  The Renewed Motion seeks preliminary approval of a revised Collective Action Settlement Agreement (the "Revised Settlement Agreement") that was included as an exhibit.  [*See* ECF No. 369-1.]  Approximately 132 of Alder's sales representatives have joined the Action as Opt-in Plaintiffs (the "Collective Action Members").  [*See* ECF No. 369-1 at 3 ¶2.1.]  The Revised Settlement Agreement governs only those Collective Action Members who opted in and whose claims are not time-barred, and who will have formally consented to settle their FLSA claims (the "Consenting Collective Action Members" or the "CCAMs").  [*See id.*]

The parties had previously submitted a similar motion for approval that left critical issues unaddressed.  *See Ennis v. Alder*, 2:19-cv-512, 2025 WL 2878522 (D. Utah Oct. 7, 2025) [hereafter *Ennis I*].  Now after having reviewed the Renewed Motion, the Revised Settlement Agreement, the proposed Notice of Settlement & Consent [ECF No. 369-1 at 22–25], various exhibits, and declarations submitted therewith, and the applicable record, the Court concludes that for the most part the parties have addressed the critical issues that concerned the Court.  The Court will

therefore GRANT the Renewed Motion and preliminarily approve the Revised Settlement Agreement as qualified below.

## FACTUAL BACKGROUND

The Court presumes the parties are familiar with the facts and procedural history of this action, which was previously summarized. *See Ennis I*, 2025 WL 2878522, at *1–2. Some facts and procedure bear repeating, however.

On February 7, 2025, the parties jointly informed the Court that they had reached a settlement on the pending claims and defenses. [*See* ECF No. 350.] Twenty day later the parties filed a Joint Motion for Approval of Collective Action (the "Joint Motion") along with a copy of a Collective Action Settlement Agreement (the "Settlement Agreement"). [*See* ECF Nos. 353 & 353-1.]

Shortly after the Joint Motion was filed, the Court directed Named Plaintiffs' counsel to submit a supplemental brief addressing the following issues:

1. What authority does the court have to approve settlement of an FLSA collective action claim on behalf of the Opt-In Plaintiffs without obtaining the Opt-In Plaintiffs' affirmative consent?

2. If consent from the Opt-In Plaintiffs must be obtained before the proposed settlement can be approved, how do the parties propose obtaining such consent?

3. Does a conflict of interest under Rule 1.8(g) of the Utah Rules of Professional Conduct arise as a result of Plaintiffs' counsel seeking approval of an aggregate settlement seeking to resolve claims on behalf of both the Named Plaintiffs and the Opt-In Plaintiffs?

4. If such a conflict does arise, how does Plaintiffs' counsel plan to obtain written consent from the Opt-In Plaintiffs to proceed with the settlement, as required by Rule 1.8(g).

-3-

[*See* ECF No. 354 at 5.]  The Supplemental Brief was filed on May 12, 2025.  [*See* ECF No. 359.]

As noted above, on October 7, 2025, the Court entered an order denying without prejudice the Joint Motion.  *See Ennis I*, 2025 WL 2878522, at *1, *11.  The parties were advised that they were welcome to submit a revised motion and revised settlement materials that address the issues and concerns raised by the court, including that any settlement agreement submitted for approval "should be singularly focused on the FLSA claims—nothing else." *Ennis I,* at *6.

On May 18, 2026, the parties filed their Renewed Motion, which included a Revised Settlement Agreement.  [*See* ECF Nos. 369, 369-1.]

## ANALYSIS

The Court must review the Renewed Motion and the Revised Settlement Agreement for fairness and reasonableness and determine if it was the product of arms-length bargaining.  The Court starts first with a review of some of the concerns the Court previously identified and how the Renewed Motion and Revised Settlement Agreement have addressed them.

1. *Have the Parties Addressed the Issues that Concerned the Court in Ennis I*

   a. *The Consent Issue*

As noted in *Ennis I*, the Court determined that a form of written express consent from each of Opt-In Plaintiff is required.  *See* 2025 WL 2878522, at *2–3. The Court found that "a form of express affirmative consent to settle must be obtained from any Opt-In Plaintiffs," and that such consent must inform any Opt-In

Plaintiffs that their affirmative consent to settle the FLSA claims is required and that they must affirmatively consent and/or object before any FLSA settlement may be finally approved. *See Ennis I,* 2025 WL 2878522, at \*3. The Court also directed that any settlement notices include an expected breakdown of any settlement disbursements identifying the estimated settlement payments to each Collective Action Member and each Named Plaintiff, and that the settlement must include a mechanism that may allow the Named Plaintiffs and any consenting Opt-In Plaintiffs to settle the FLSA claims without those who do not respond or who object. *See id.* And lastly the Court directed that all confirmations of affirmative consent to settlement, and any objections to the settlement, must be presented to the Court and that Plaintiffs' counsel must file a declaration identifying those Opt-In Plaintiffs who have consented, those that have objected, and those who have not responded. *See id.*

After reviewing the Renewed Motion and the Revised Settlement Agreement, the Court finds that the consent-related concerns it raised have been adequately addressed by the parties. For example, the proposed Notice of Settlement & Consent now includes a mechanism in which the Opt-in Plaintiffs, i.e., the Collective Action Members, may affirmatively consent or object to any settlement. [*See* ECF No. 369-1 at 22–25; *see also* 369-1 at 5 ¶3.2.] In addition, all such consents will be reported to the Court. [*See id.* at 22. ("If you affirmatively consent to the Settlement, your consent will be reported to the Court and Collective Counsel will seek final approval of the Settlement.").]

### b. *The Settlement Payments and Distribution Issue*

The Court raised concerns that the initial Joint Motion and Settlement Agreement did not fairly represent how much of the payment to the NPs represents a FLSA claim payment. *See Ennis I*, 2025 WL 2878522, at *4–6. The Renewed Motion and the Revised Settlement Agreement now represent that the NPs will each receive $4,543.70 in settlement of their FLSA claims. [*See* ECF Nos. 369 at 8; 369-1 at 4 ¶2.6.][2]

The Court was also concerned that the initial Settlement Agreement failed to explain if the NPs were receiving an incentive or service award relating to the FLSA claims. The Renewed Motion and Revised Settlement Agreement, however, do not indicate that any such award is being paid. Nor would such an award appear to be appropriate since neither the Renewed Motion nor the Revised Settlement Agreement presents any information on the hours the NPs spent on the litigation, the risks they faced by participating, or the benefits they provided.

That said, the Court is concerned that the $4,543.70 FLSA settlement payment to the NPs appears to be far greater than similar awards to the CCAMs. The Renewed Motion and Revised Settlement Agreement state that the NPs' FLSA payment "is based on each of the Named Plaintiffs having worked 2.5 summers for Alder within the tolled statute of limitations period, which is the same computation

---

[2]    As discussed below, however, the proposed Notice of Settlement & Consent does not include this same representation.

used to determine the Settlement Share for all other CCAMs." [ECF No. 369 at 8; *see also* ECF No. 369-1 at 4 ¶2.6.] When examining Exhibit C to the Revised Settlement Agreement, which as represented in the Renewed Motion is the FLSA settlement payment to be paid to each CCAM "based on the calculation formula set forth in the [Revised] Settlement Agreement," it appears, however, that a payment for 2.5 summers of overtime under this formula should amount to a payment of $2,556.25, which is significantly less than the $4,543.70 that is being paid to the NPs based on the same number of summer overtime hours. [*See* ECF Nos. 369 at 8; 369-1 at 19–21.] When seeking final approval of any settlement, the parties are directed to inform the Court why there is such a discrepancy.

The Court also raised some concerns as to purported tax-related deductions to be taken from the FLSA settlement payments to be made to the CCAMs. The Revised Settlement Agreement has addressed this issue by noting that there will be no deductions from the FLSA payments to the CCAMs for any employee or employer taxes. [*See* ECF No. 369-1 at 4 ¶2.4.]

### c. *The Releases*

In *Ennis I* the Court indicated that the proposed release may be overbroad because, among other things, it asked the CCAMs to release all claims asserted in the Action and not just the FLSA claims. *See Ennis I*, 2025 WL 2878522, at *6. The Revised Settlement Agreement has removed that broad release and replaced it with a release that is limited to the release of liabilities, damages, and claims "stemming from their FLSA claims asserted in the Action." [*See* ECF No. 369-1 at 3 ¶2.2.]

The Court was also concerned that the release in the initial Settlement Agreement purported to release persons other than persons or entities that could be considered "Employers" under the FLSA.  While the release included in the Revised Settlement Agreement addresses, in part, this concern, it still purports to release persons, such as "respective insurers and attorneys" who do not appear to fall within the category of person who may be considered "Employers."  As noted in *Ennis I*, any release should be limited to the named employers and "'any other person or entity associated with the [Employer] that was a[n] … "Employer" as defined by FLSA.'"  *Ennis I,* 2025 2878522, at *7 (quoting *Cazeau v. TPUSA, Inc.*, No. 2:18-cv-0321, 2020 WL 3605652, at *10, *11 (D. Utah July 2, 2020)).

### d. *Timing of the Settlement Payments*

The Court also raised some concern as to the timing of the FLSA settlement payments.  *Ennis I*, 2025 WL 2878522, at *8.  The Revised Settlement Agreement now identifies when the FLSA settlement payments to the CCAMs will begin.

### e. *Timing for Cashing Checks*

The initial Settlement Agreement provided that checks to the CCAMs "must be cashed within sixty (60) days" after they are issued.  [ECF No. 353-1 at ¶7(b).]  The Court was concerned that this was too short a period and that it conflicted with standard U.C.C. provisions.  *See Ennis I*, 2025 WL 2878522, at *9.  The Revised Settlement Agreement now provides that "[c]hecks issued to CCAMs pursuant to this Settlement Agreement must be cashed within 180 days of the date on the face of the check."  [*See* ECF No. 369-1 at 5 ¶3.3(a).]

The Revised Settlement Agreement has also removed the *cy pres* charitable distribution provision for uncashed checks that concerned the Court. *See Ennis I*, 2025 WL 2878522, at *9. Now all uncashed checks will be remitted to the State of Utah's "Unclaimed Property Division for safekeeping and reunification." [*See* ECF No. 369-1 at 5 ¶3.3(b).]

### f. *Allocation of Attorneys' Fees and Costs*

In *Ennis I* the Court raised concerns as to how Plaintiffs' counsel had apportioned their work as between the FLSA claims of the CCAMs, the FLSA claims of the NPs, and any of the individual or class claims pursued in this Action. Among other things, the Court was concerned that many of the attorney hours expended in this Action may not have concerned the FLSA claims, but rather more time was spent on the individual or class claims issues. *See Ennis I*, 2025 WL 2878522, at *9–10.

Although Plaintiffs' counsel has not presented an affidavit of the type that the Court envisioned that would explain the apportionment, *see id.* at *10, the Renewed Motion and the Revised Settlement Agreement reveal that Plaintiffs' counsel claims to have spent at least 2,725 total attorney hours on this Action. [*See, e.g.,* ECF No. 369-2 at 2 ¶5.] These submissions also claim that the lowest hourly rate for any attorney working on this matter was $200. [*See id.*] Applying the lowest hourly rate to the total number of hours worked yields a minimum total hourly fee of approximately $545,000.

As noted in *Ennis I*, and as also confirmed in the Revised Settlement Agreement, the settlement payments to the NPs to settle all their claims (including their FLSA claims) and to forgo any class action claims is approximately $1,000,000. [*See* ECF No. 369-1 at 2 ¶1.6; at 4 ¶2.6; *Ennis I*, 2025 WL 2878522, at *4.] The total gross amount to settle the CCAMs' FLSA claims is an additional $250,000 (the "Gross Settlement Amount"). [*See* ECF No. 369-1 at 3 ¶2.3.] Thus, the total to settle all claims in this Action is approximately $1,250,000.

Given that the Gross Settlement Amount represents 20% of the total settlement amount, that 20% figure may be a good proxy for estimating how the attorneys' fees and costs incurred in the Action should be apportioned to the CCAMs' FLSA claims. Given the representation that total attorneys' fees in this Action were no less than $545,000, applying this 20% attribution would result in a FLSA-related fee award of approximately $109,000.[3] Thus, at this stage, the request for attorneys' fees of up to 33.33% of the Gross Settlement Amount (*i.e.*, up to $83,325)[4] appears reasonable.[5]

---

[3] Although the Court would like more detailed analysis of how the fees should be apportioned, *see Ennis I*, at *9–10; *infra* note 5, this calculation is consistent with the representation that the attorneys' fees requested "will not cover the billable time spent on this case attributable to the collective action claims." [*See* ECF No. 369-2 at 2–3 ¶7.]

[4] The Court notes that the representation of the maximum dollar amount of the requested attorneys' fees is not consistent in the relevant settlement documents. For example, although the Declaration of Attorneys' Fees and Costs correctly represents the maximum dollar amount of the fees as $83,325 [*see* ECF No. 369-2 at 2 ¶7], the Revised Settlement Agreement provides that the maximum fee will be "up to $82,500." [*See* ECF No. 369-1 at 3 ¶2.3.a.i.]

[5] However, this is merely a proxy. When submitting for final approval of this FLSA settlement, Plaintiffs' counsel is directed to file a declaration detailing its fee and cost calculations, including explaining how the fees and costs were apportioned between the CCAMs' FLSA claims and any other claims in this Action. *See Ennis I*, 2025 WL 2878522,

The same is true for the allocation of costs.  Plaintiffs' counsel represents that it incurred at least $85,982.45 in non-reimbursable out-of-pocket costs.  [*See* ECF No. 369-2 at 3 ¶9.]  Using that same 20% attribution calculated above, this would suggest costs of approximately $17,196 may be attributed to the CCAMs' FLSA claims.  Thus, at this stage, the request for the payment of costs of $17,196 appears reasonable.

*2.  Overview of the Revised Settlement Agreement*

The Revised Settlement Agreement provides for payment of a Gross Settlement Amount of $250,000.  That amount is to be apportioned and then distributed to the CCAMs in return for their release of any FLSA claims.  [*See* ECF No. 369-1 at 4 ¶2.3.]  The Gross Settlement Amount will be apportioned as follows: (1) by the payment of approximately $10,000 in fees to a settlement administrator for facilitating the distribution of payments to the CCAMs; (2) by payment of "up to $82,500"[6] (33% of the CCAMs Gross Settlement Amount, or whichever lesser percentage amount is awarded by the Court) in attorney's fees" to be paid to Plaintiffs' counsel; and (3) by payment of $17,196 in costs (representing 20% of

---

at *10.  That submission should be at least as detailed as the exhibit Plaintiffs' counsel included when it previously sought fees in this Action.  [*See, e.g.,* ECF No. 109-1.]  The declaration should also address whether non-party Vivint may have paid any fees or costs in connection with this Action.  *See Ennis I*, 2025 WL 2878522, at *9 n.13.  And although, as discussed below, the Court is using the common fund percentage of fund approach as a method to assess the reasonableness of the attorneys' fees, it is also appropriate for the Court to examine whether the requested fee is reasonable under a lodestar crosscheck.  *See Cambell v. C.R. England,* No. 2:13-cv-0262, 2015 WL 7773709, at *7 n.5 (D. Utah Sept. 30, 2015) (unpublished).  Without this detail the Court cannot do so.

[6]      This amount appears to be a typo, *see supra* n.4.

counsels' out-of-pocket costs).  [*See id.*]  There will be no deductions for the payment of any taxes.  [*See id.* at 5 ¶2.4.]

The remainder of $140,304 is then to be distributed to the CCAMs based on a calculation factoring in the time each CCAM worked for Alder within the tolled statute of limitation and using an estimation of overtime hours worked based on the number of summers and blitzes worked within that period.  [*See id.* at 4–5  ¶¶2.3 & 2.4.]  A preliminary apportionment of such distribution is included as Exhibit C to the Revised Settlement Agreement.  [*See id.* at 19–21.]  If  80% or more of the eligible Collective Action Members consent to the Revised Settlement Agreement, the entire remainder will be distributed to the CCAMs as if the non-consenting eligible individuals were not included in the apportionment on Exhibit C.  And if fewer than 80% consent, the CCAMs preliminary apportionment outlined in Exhibit C shall remain the same.  But, if fewer than 60% of all eligible Collective Action Members consent to this Settlement Agreement, the Defendants may elect to terminate the Revised Settlement Agreement within 10 days of receiving the results of the 45-day consent/objection period.  [*See id.* at 4 ¶2.4.].

As identified on Exhibit C, the individual CCAMs' FLSA payments are estimated to range from a low $51.12 to a high of $3,067.50 before the apportionment of any fees and costs.  [*See id.* at 19–21.]  It is estimated that the award to at least 77 of these members will be equal to or in excess of $1,022.50

-12-

before any fees or costs deductions.[7]   [*See id.*]   As noted in the Revised Settlement Agreement, each NP will receive a FLSA payment of $4,543.70.  [*See id.* at ¶ 2.6.]

### 3. Preliminary Approval of the Revised Settlement Agreement

To preliminarily approve a proposed FLSA collective action settlement, the Court must first determine whether the action concerns a bona fide dispute. Second, it must determine whether the proposed settlement is fair and reasonable. And finally, it must determine if any award of attorneys' fees award is reasonable. *See, e.g.*, *Bingham v. doTERRA Int'l, LLC*, No. 2:23-cv-0707, 2025 WL 1474036, at *1 (D. Utah May 22, 2025) (unpublished) ("Courts follow a three-step inquiry in determining whether to approve an FLSA settlement.") (footnotes, citations, and quotations omitted); *Keel v. O'Reilly Auto Enters., LLC*, No. 2:17-cv-667, 2018 WL 10509413, at *2 (D. Utah May 31, 2018) (unpublished) ("If the dispute is bona fide, the court then asks two questions:  First, is the settlement fair and reasonable to all parties concerned?  And second, does the proposed settlement contain a reasonable award of attorneys' fees?") (citations omitted); *Campbell,* 2015 WL 7773709, at *2–7 (noting approval depends on the existence of bona fide dispute and a determination that the settlement is fair and reasonable and that the request for attorneys' fees is also reasonable).

---

[7]   Eighteen of the 132 persons identified on Exhibit C, however, were not estimated to have worked any summer or blitzes overtime and therefore no payment will be distributed to them.  [*See* ECF No. 369-1 at 19–21.]

### a. *A Bona Fide Dispute Exists*

For a bona fide dispute to exist, there must be some doubt whether the CCAMs may succeed on their FLSA claims. *See Bingham*, 2025 WL 1474036, at *2 (citations omitted). And to meet the bona fide dispute requirement, the parties must provide the court with:

> (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employee; (3) the employer's reasons for disputing the employee's right to a minimum wage or overtime; (4) the employee's justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage.

*Id.* (quotation omitted)

Here the Renewed Motion and other record submissions make such a presentation. The operative complaint alleged that Alder misclassified the CCAMs as independent contractors and failed to pay them overtime and a minimum wage as required under FLSA. [*See* ECF No. 157 at ¶¶69-93; ¶¶145-153; ¶¶162-171.] Alder, however, raised various defenses, including that the CCAMs' FLSA claims were barred under FLSA's outside sales or retail and service exemptions, that the CCAMs had waived any collective claims, and that the CCAMs cannot establish that they are "similarly situated." [*See* ECF Nos. 265 at 21, 26–37; 298 at 12–19.] The CCAMs, through Plaintiffs' counsel, asserted that any waiver is not applicable and that these exemptions do not apply. [*See* ECF No. 274 at ¶¶40–45.] Further, the Court has been presented with estimates of the number of overtime hours the

CCAMs worked and their wages. [*See* ECF No. 369 at 17–1.][8]  Given the parties' positions, the Court finds that a bona fide dispute exists.

### b.  *The Revised Settlement Agreement is Fair and Reasonable*

In evaluating whether a FLSA settlement is fair and reasonable, courts generally consider four non-exhaustive factors:  (1) was the proposed settlement fairly and honestly negotiated; (2) do serious questions of law and fact exist that place the outcome of the litigation in doubt; (3) is the value of an immediate recovery more valuable than the mere possibility of a more favorable outcome after further litigation; and (4) do the parties believe that the settlement is fair and reasonable.  *See Campbell*, 2015 WL 5773709, at *5 (citations omitted); *see also Bingham*, 2025 WL 1474036, at *3 (same).  These factors are satisfied here.

The parties are represented by experienced and independent counsel and, as noted in the Renewed Motion, this settlement was reached after a "lengthy arm's length process."  [ECF No. 369 at 19.]  Indeed, this was a hotly litigated proceeding including a motion to dismiss, motions for summary judgment, sanctions motions, motions to certify a collective action and decertify a collective action, and too many discovery-related motions to mention.  The claims raised challenging issues of law and fact that made it difficult to predict the ultimate outcome of this case and, in that context, an immediate recovery of awards ranging from a high of $3,067 to a

---

[8]    It appears that the total estimated unpaid overtimes wages recited in both the Revised Motion and the Joint Motion contains a typo:  the total amount of estimated unpaid wages should read $1,863,030 and not $1,863.03. [*Compare* ECF No. 369 at 18 and ECF No. 353 at 14 *with* ECF No. 277-2, Expert Witness Report of Jeremy A. Sharpe MBA (sealed), at 2 (calculating the total overtime claim at $1,863,030).]

low of $51.12 (and with 77 of the 114 awards equaling or exceeding $1,022.25) appears to be preferable to the uncertainty of some future relief.[9]  And of course, the parties have stated that they prefer this settlement to continuing to litigate these issues and that, in their judgment, the Revised Settlement Agreement is fair and reasonable.  [*See* ECF No. 369 at 19; ECF No. 369-1 at 2 ¶¶1.5, 1.7, 1.8.]

Consequently, the Court finds that the settlement is fair and reasonable.

### c.  *The Attorneys' Fees and Costs Appear Reasonable*

The FLSA provides for an award of attorneys' fees and costs in any action. *See* 29 U.S.C. § 216(b).  Any award of attorneys' fees in a FLSA settlement must be reasonable.  *Id.*  In a FLSA settlement like this, where a common fund is recovered and attorneys' fees awarded, this Court has applied, and the Tenth Circuit has recognized that the correct approach to assess reasonableness is to use a percentage of the fund method.  *See Campbell*, 2015 WL 7773709, at *6 (citations omitted.) Here, Plaintiffs' counsel seeks an attorneys' fee of up to 33.33% of the $250,000 Gross Settlement Amount to be paid to the CCAMs.  [*See* ECF Nos. 369 at 19–20; 369-1 at 3 ¶2.3.]

And in assessing reasonableness under this method, the Tenth Circuit has instructed courts to consider the following factors:

---

[9]     Although the Court recognizes that the computation behind this range reflects a payout of approximately $0.13 for each estimated overtime hour worked, the fact that such an hourly rate appears so low does not, standing alone, raise a concern that the settlement is unfair or unreasonable.  Here, if the defenses asserted by Defendants were successful, the CCAMs would not have had any recovery.  In such circumstances, the fact that the CCAMs' FLSA claims were compromised at a rate below what the actual overtime rate may have been appears to represent a reasonable comprise.  *See Cazeau v. TPUSA, Inc.*, No. 2:18-cv-0321, 2021 WL 1688540, at *5 (D. Utah Apr. 29, 2021) (unpublished).

(1) time and labor required; (2) novelty and difficulty of question presented by the case; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorneys due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8) amount involved and results obtained; (9) experience, reputation and ability of the attorneys; (10) "undesirability" of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases.

*See id.* (citations omitted).

Considering the attorneys' fee request in light of these factors, the Court finds the requested fee is, at this stage, reasonable.  This case has been hotly contested since it commenced in July 2019.  Moreover, Plaintiffs' counsel has experience in litigating and settling FLSA cases both as plaintiffs' counsel and as defendants' counsel.[10]  It is the Court's view that Plaintiffs' counsel has litigated this matter for almost seven years with competence, diligence, and professionalism.  There were several amended pleadings filed, and the parties engaged in extensive discovery and dispositive motion practice.  The Court also notes that Plaintiffs' counsel accepted this case on a contingency basis and therefore took substantial risk in receiving no payment for their time in light of the many unresolved legal questions in this case.  And of course, ultimately, Plaintiffs' counsel was successful in obtaining a settlement on behalf of the CCAMs.  Moreover, the Court finds that an award of up to 33.33% of the Gross Settlement Amount represents a conventional and common contingency fee award.  *See, e.g., Campbell*, 2015 WL 7 5773709, at *7 (citing cases).

---

[10]    *See, e.g., Murdock v. Skinner*, No. 22-cv-0019 (D. Utah) (defendants' counsel); *Cazeau v. TPUSA, Inc.*, No. 2:18-cv-0321 (D. Utah) (plaintiffs' counsel)

Weighing against these factors is the fact that the initial notice of a FLSA collective action sent to potential CCAMs did not indicate any rate or percentage that would be paid to Plaintiffs' counsel as attorneys' fees.  That notice merely informed them that if Plaintiffs' counsel recovered any money or benefits for the CCAMs, counsel "may ask the Court for fees and expenses" and that if the Court grants that request, "the fees and expenses would be either deducted from any money obtained for the Class or paid separately by Alder."  [*See* ECF No. 90-1 at 5 ¶19.]  Thus, it will not be until the CCAMs receive the Notice of Settlement & Consent proposed under the Renewed Settlement Agreement that they will be informed that Plaintiffs' counsel is seeking 33.33% of the Gross Settlement Amount as a fee and that they—and not Alder—will shoulder that fee.  [*See* ECF No. 369-1 at 23.]  Additionally, and as discussed above, Plaintiffs' counsel has not fully satisfied the Court as to how it has allocated its fees and costs in this Action as between the FLSA claims and the other asserted claims.

Thus, after examining all these factors, and subject to re-evaluation after receiving the additional detail requested from Plaintiffs' counsel, the Court finds that on a preliminary basis these factors support the conclusion that an attorneys' fee award of no more than 33.33% of the Gross Settlement Amount (*i.e.*, no more than $83,325.00) is reasonable.  The exact calculation will be determined after the Court reviews the detailed fee information it has requested and at such time as the parties file their contemplated joint motion for final approval of the Revised Settlement Agreement.  [*See* ECF No. 369 at 3.]

With respect to costs, Plaintiffs' counsel seeks reimbursement in the amount of $17,196.00, which represents 20% of counsel's out-of-pocket costs.  Based upon the declaration of Plaintiffs' counsel, including that this amount is less than the "costs of document management services need to handle the collective action member's information,"[11] and the fact that the parties have agreed to this amount in the Revised Settlement Agreement, this amount appears reasonable.

### d. *Payments to the Settlement Administrator*

The Revised Settlement Agreement also provides that the estimated $10,000 expense of a "Settlement "Administrator" will be paid out the Gross Settlement Amount.  [*See* ECF No. 369-1 at 3–4 ¶¶2.3 & 3.1.]  The Revised Settlement Agreement states that the Settlement Administrator will "notify eligible FLSA collective action members of the proposed Settlement Agreement," "calculate and distribute" any settlement payments, and "provide the CCAMs with 1099 tax forms" and file "any required 1099 reports with the appropriate taxing authorities." [*See* ECF No. 369-1 at 4 ¶3.1.]

As an initial matter, the only argument made in support of the reasonableness of this expense is the statement in the Renewed Motion that the $10,000 "bid" provided by the Settlement Administrator is "competitive" and will "cover the costs of the mailing of settlement checks, the notice postcards, and the tax reporting of such payments."  [*See* ECF No. 369 at 24.]  Without more, however,

---

[11]     *See* ECF No. 369-2 at 3 ¶9.

the Court is unable to make a final determination as to whether this amount is reasonable.

Among other things, the parties appear to suggest that it is the CCAMs—the party receiving the Form 1099—that should be absorbing the cost of preparing and reporting the 1099 to any taxing authority.  Generally, it is the payor—in this case Alder—who bears the expense of preparing and reporting any 1099 forms.

In addition, under the Revised Settlement Agreement, notice and settlement payments will only be sent to 132 people.  A $10,000 expense breaks down to a cost of approximately $75.75 per person.  In *Cazeau v. TPUSA, Inc.*, the court approved a settlement administrator payment—which included services of operating an opt-in website, mailing notice, settlement checks, and tax reporting materials—that amounted to just $2.12 per person, which is far less than the more than $75.75 per person requested here.  *See* 2021 WL 1688540, at *6.

As noted above, the parties have not presented any information to allow the Court to make any reasonableness assessment of this total expense.  Therefore, the Court directs the parties to file a declaration that explains why the $10,000 requested for Settlement Administrator expenses should be considered reasonable, including identifying how these expenses relate solely to the CCAMs' FLSA settlement and explaining why the CCAMs, and not Alder, are paying any expenses relating to the preparation and filing of any Form 1099s.  Because, however, the parties have already agreed to this payment, the Court will

preliminarily approve a payment of up to $10,000 as reasonable, subject to revision following the Court's review of the information requested above.

### e.  *Approval of the Proposed Notice of Settlement & Consent*

Previously, the Court raised several issues concerning the initial Notice sent to the CCAMS.  *See, e.g., Ennis I*, 2025 WL 2878522, at *2, *7–8.  As noted above, the Revised Settlement Agreement and proposed Notice of Settlement & Consent have addressed most of the issues that the Court raised.  But the proposed Notice of Settlement still fails on two points.  First, it does not include the expected "breakdown of any settlement disbursements identifying … each Named Plaintiffs estimated settlement payment."  *Id.* at *3.  While the Revised Settlement Agreement and Renewed Motion identify the FLSA payments that each of the NPs will receive, that amount is not disclosed in the proposed Notice of Settlement & Consent.

Similarly, the Court previously informed the parties that the release should be limited to named employers and then state and "'any other person or entity associated with the [Employer] that was a[n] … "Employer" as defined by FLSA.'" *Id.* at *7 (quoting *Cazeau*, 2020 WL 3605652, at *10, *11).  As noted above, however, the release included in the Revised Settlement Agreement and the proposed Notice of Settlement & Consent is not so limited.  Subject to revision of the proposed Notice of Settlement & Consent and the Revised Settlement Agreement to include this information and reform the release, the Court will grant the Renewed Motion.  The Court's preliminary approval of the Revised Settlement Agreement, however, will

not be effective until after the proposed Notice of Settlement & Consent and Revised Settlement Agreement is so corrected.  *See Cazeau*, 2021 WL 1688540, at *6.

## CONCLUSION

Accordingly, **IT IS THEREFORE ORDERED** that the Renewed Motion [ECF No. 369] is **GRANTED IN PART**, as qualified herein, and the Revised Settlement Agreement is preliminarily approved; and

**IT IS FURTHER ORDERED** that no later than the date on which the joint motion for final approval of this settlement is filed the parties are directed to also file:  (1) a new declaration detailing any attorneys' fees and costs calculations (as discussed above), including explaining how these fees and costs have been apportioned between the CCAMs' FLSA claims and any other claims in this Action, and addressing whether any non-party may have paid any fees or costs in connection with this Action; and (2) a declaration explaining why the $10,000 requested for Settlement Administrator expenses should be considered reasonable, identifying how these expenses relate solely to the CCAMs' FLSA settlement, and explaining why the CCAMs are paying any expenses relating to the preparation and filing of any Form 1099s; and

**IT IS FURTHER ORDERED** that within 10 days of entry of the Memorandum and Order the parties are to submit a revised Notice of Settlement & Consent and a Revised Settlement Agreement that contain a revised release (as identified herein) and adds to the Notice of Settlement & Consent a disclosure

identifying the amount of FLSA settlement payments to be paid to each of the NPs; and

**IT IS FURTHER ORDERED** that that Court's preliminary approval of the Revised Settlement Agreement will not be effective until after the Court has received the corrected Notice of Settlement & Consent and Revised Settlement Agreement requested above.  Following its review of these additional materials, the Court will enter a further order concerning the effective date of any preliminary approval.

DATED this 23rd day of June 2026.

BY THE COURT:

_____

Clark Waddoups
United States District Judge